**In re WELLS FARGO SECURITIES LITIGATION,**

**This Document Relates To All Actions.**

**No. C–91–1944–VRW.**

United States District Court,
N.D. California.

June 30, 1994.

**224**

Melvin R. Goldman, Jack W. Londen, Paul Flum, Morrison & Foerster, San Francisco, CA, for defendants.

Milberg, Weiss, Bershad Hynes & Lerach, William S. Lerach, Jan M. Adler, San Diego, CA, Berger & Montague, P.C., Sherrie R. Savett, Philadelphia, PA, Kaplan & Kilsheimer, Robert N. Kaplan, New York City, Kohn, Savett, Klein & Graf, Dianne M. Nast, Philadelphia, PA, Greenfield & Chimicles, Richard D. Greenfield, Mark C. Rifkin, Haverford, PA, Berman, DeValerio & Pease, Glen De-Valerio, Boston, MA, Greenfield & Chimicles, R. Bruce McNew, Los Angeles, CA, Gross & Metzger, P.C., Ann White, Philadelphia, PA, Lowey, Dannenberg, Bemporad & Selinger, P.C., Richard B. Dannenberg, New York City, Lieff, Cabraser & Heimann, Elizabeth Joan Cabraser, William B. Hirsch, San Francisco, CA, Law Office of Andrew J. Oglivie, San Francisco, CA, Sachnoff & Weaver, Lowell B. Sachnoff, Chicago, IL, Wolf, Popper, Ross, Wolf & Jones, Laurence D. Paskowitz, New York City, for plaintiffs.

## ORDER

WALKER, District Judge.

The court held a status conference on June 24 to discuss the selection of class counsel for the balance of this litigation and the determination of how lawyers for the class should be compensated. On the plaintiff side were Richard Heimann of Lieff, Cabraser & Heimann and William Lerach of Milberg Weiss Bershad Hynes & Lerach, whose firms to date have acted as de facto class counsel, and Richard Dannenberg of Lowey Dannenberg Bemporad & Selinger. Melvin Goldman of Morrison & Foerster appeared for defendants.

I

This litigation is almost three years old, yet proceedings have focused solely on whether plaintiffs have pled an actionable claim. See *In re Wells Fargo Securities Litigation,* 12 F.3d 922 (9th Cir.1993). This aspect of the case continues as defendants have recently filed a petition for certiorari to challenge the Ninth Circuit's reinstatement of the amended complaint. Lieff, Cabraser and Milberg Weiss are in the process of preparing an opposition to that petition, to be filed shortly.

In the meantime, the mandate has come down from the court of appeals, so proceedings in this court will soon resume. The court must, therefore, address representation of the class, an issue deferred at the commencement of the litigation three years ago because of what the court regarded as a strong motion to dismiss.

### A

■ Hindsight suggests that, despite the motion to dismiss, appointment of class counsel and determination of the terms of their engagement should have been made when the case began. To have done so then would have been consistent with the suggestion of Judge Sneed in *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1312 (9th Cir.1990) (concurring), with the Third Circuit Task Force Report, *Court Ordered Attorney Fees,* 108 F.R.D. 237 (1985) and with this court's decisions in *In re Oracle Securities Litigation,* 131 F.R.D. 688, 132 F.R.D. 538, 136 F.R.D. 639 (N.D.Cal.1990, 1991). Settling matters then would also have afforded certainty to all participants in the case.

■ Although their work to date suggests that Lieff, Cabraser and Milberg Weiss should be permitted to continue representing the class in opposing the certiorari petition and any follow-up proceedings in the Supreme Court, this is not reason enough to continue these firms as class counsel beyond that phase of the litigation. For while Lieff, Cabraser and Milberg Weiss have unquestionably gained familiarity with the claims

asserted, Mr. Heimann conceded that the work of these firms on the litigation has focused exclusively on the pleadings, rather than factual investigation, discovery and pre-trial preparation. The litigation is, therefore, about to enter a new and distinctly different phase and, because the bulk of work in preparing the case for trial lies ahead, the present still represents an early stage notwithstanding the relatively advanced chronological age of the litigation.

Furthermore, appointing class counsel now will not necessarily deny the class any possible benefit of continued representation by Lieff, Cabraser and Milberg Weiss. First, provision can be readily made to compensate them for their work to date and for any that may arise in the Supreme Court, thereby assuring the class continuity in that effort. Second, as will shortly be explained, compensation for all work on the case can be established now with greater fidelity to its actual market value than would be possible if Lieff, Cabraser and Milberg Weiss were simply retained as de facto class counsel. Third, and most importantly, nothing hinders these two firms from proposing to represent the class for the remainder of the case. If they demand a premium for their experience over proposals submitted by other firms, this extra cost can be evaluated to determine if it is warranted by the possible advantages of continuity.

■ Early selection of class counsel and determination of their compensation serve the interests of the class by enabling these matters to be resolved competitively. None of the plaintiff lawyers appearing at the June 24 status conference objected to setting class counsel's compensation arrangements now instead of letting the matter drift to the end of the case. Strikingly, however, the lawyers' suggestions omitted mention of competition.

Mr. Dannenberg suggested at the status conference that, rather than selecting class counsel competitively, the court simply appoint Lieff, Cabraser and Milberg Weiss in recognition of their work so far, and through a master or magistrate "negotiate" a fee arrangement with those firms as was done in *U.S. Surgical Securities Litigation,*

92CV00374 (AHN) (D.Conn.1993). This approach is an alternative which the *Surgical* court evidently found satisfactory. But Messrs. Heimann and Lerach did not favor the idea, believing that it would be unduly time-consuming. Moreover, how negotiations can be effectively conducted when class counsel have already been selected is unclear. To designate the lawyers to act as class counsel in advance would disarm the master or magistrate before the negotiations even began.

Mr. Heimann urged a straight 25 percent fee with a bonus in the event of a recovery greater than some set amount. This approach was used in the *Lincoln Savings* litigation, but suffers the defects associated with benchmark or arbitrary percentage class counsel fees. See *In re Oracle Securities Litigation,* 131 F.R.D. at 695–97. Moreover, the bonus feature for greater recoveries creates particularly perverse incentives. *Oracle,* 136 F.R.D. at 645–52.

None of the alternatives advanced by the lawyers appears better suited to simulating the outcome of a market process than the submission of competing proposals by the firms interested in representing the class. As the court's task is to approximate as closely as possible the attorney selection and fee bargain that the class itself would strike if it were able to do so, *In re Continental Illinois Securities Litig.,* 962 F.2d 566 (7th Cir.1992), the court directs interested lawyers to submit proposals as hereafter provided.

### B

■ Messrs. Heimann and Lerach also advocated that the court allow the appointment of more than one firm as class counsel; they intimated that their two firms would then submit a joint bid. The court has seriously considered this suggestion, but rejects it as inconsistent with what the class would choose in the circumstances at bar.

■ It is certainly true, as Mr. Lerach pointed out, that joint ventures are a common feature of many business activities, especially those directed to a discrete project analogous to the prosecution of a major securities class action (e.g., construction, oil ex-

ploration, insurance against a catastrophic risk). But joint ventures which substantially lessen competition are not tolerated under our competition laws. See 15 U.S.C. § 1 et seq.; *United States v. Penn–Olin Chemical Co.*, 378 U.S. 158, 170, 84 S.Ct. 1710, 1716–17, 12 L.Ed.2d 775 (1964). Committing control of this litigation to a steering committee of all the plaintiff lawyers filing actions consolidated in this litigation would certainly have that effect. Even a joint bid by Lieff, Cabraser and Milberg Weiss in the circumstances of the present case poses a sufficiently "dangerous probability" of lessened competition that the class, if well advised, would refuse to accept such a bid.

By virtue of the role that they have played to date in the litigation, Lieff, Cabraser and Milberg Weiss already have a qualitative advantage in the process of selecting class counsel for the remainder of the litigation. In addition, each is a large, well-financed firm plainly able to handle the litigation without the assistance of another firm. A joint bid by two or more firms otherwise too small to take on class counsel responsibilities would introduce a new competitor to the selection process; by contrast, to permit a joint bid by two dominant firms such as Lieff, Cabraser and Milberg Weiss might very well eliminate whatever possibility remains in this case of a meaningful competition to secure class counsel designation. Accepting a joint bid by these two firms would be tantamount to turning over the litigation to a two-firm steering committee.

Mr. Lerach acknowledged that plaintiff law firms, which usually take cases on a contingent fee basis, join together to prosecute major complex cases because doing so allows them to leverage their resources and spread the risks of unfavorable outcomes. Because big cases require substantial investments of attorney effort and money, a firm cannot afford to take on a big contingent fee case if it exposes the firm to a significant possibility that the firm will not generate any cash for a lengthy period. Associate lawyers, non-professional personnel, rent and other continuing costs of operation must be paid regularly notwithstanding the irregularity of cash flows.

This fact of economic life for a plaintiff law firm, coupled with the desire nonetheless to bring in big money cases, makes it common practice for plaintiff firms to join together, typically under the aegis of a plaintiff steering committee, to prosecute big cases. In that way, the firms lever themselves into cases for which their individual resources would otherwise be too small and spread the attendant risks by diversifying the number of cases in their litigation portfolios.

Not candidly acknowledged by anyone at the June 24 status conference is that judicial acceptance of this practice in class actions effectively extinguishes competition among the plaintiff lawyers and therefore harms the interests of the class. This stems from the qualitative difference in the relationship between class members and the plaintiff class lawyers from that between individual clients and their lawyers.

An individual client can search for and strike a bargain for representation with any lawyer or law firm that does the type of work needed. But class members do not go shopping for their lawyers, or indeed do anything else in the case other than agree to lend their names to the litigation. Plaintiff lawyers in class actions generate the market for their own legal services. By allowing all the interested plaintiff lawyers to form a steering committee for each class action in which more than one plaintiff firm is interested essentially permits these lawyers to create an ad hoc monopoly in each such case.

This is not to say that all competition is extinguished for plaintiff work in class actions. In securities cases, particularly, plaintiff lawyers race to have the first case on file after the shock to the security's price that triggers the case and thereby to earn some kind of credit for earnestness in securing lead counsel designation. There remain the contests of "qualifications" which occasionally break out for lead counsel designation, see *In re Oracle Securities Litigation*, 131 F.R.D. at 690–91 (N.D.Cal.1990). Plaintiff class lawyers, like all lawyers, vie with each other for generalized professional recognition. And, lawyers being what they are, the meetings of class action plaintiff steering committees are surely, at times, fractious affairs. But the

steering committee device, together with the self-generating nature of plaintiff work in class actions, puts a real damper on competition when it comes to the price and quality of counsel's services. No doubt, this is why plaintiff class action lawyers like the device so much.

A two firm steering committee can be just as bad from this perspective as a hydra-headed one if only two firms are seriously interested in the litigation or if, as could be the case with Lieff, Cabraser and Milberg Weiss, they jointly possess such a significant head start that no other firm comes forward to seek representation of the class. Furthermore, even if Lieff, Cabraser and Milberg Weiss do not so dominate this case that all other potential class representatives are dissuaded from coming forward, requiring the two firms to make separate proposals to represent the class increases by one the number of proposals likely to be received and thereby increases the competitiveness of the selection process. Because the court has an obligation to attempt to obtain representation of the class on the best terms available, the court rejects the suggestion that it allow Lieff, Cabraser and Milberg Weiss to submit a joint proposal to complete this litigation on behalf of the class.

Foreclosing the possibility of a joint bid in no way prevents Lieff, Cabraser, Milberg Weiss or other firms from attempting to achieve any legitimate objective of leveraging and risk spreading, as described by Mr. Lerach. Nothing precludes a firm selected as class counsel from farming out work on the case to another law firm because of specialized knowledge, geographic proximity to witnesses or evidence or other comparative advantages, or even to spread risk. Allowing subcontracting or joint venturing *after* a competitive selection of class counsel is, however, quite different from substituting a joint venture or plaintiff steering committee *for* competition in the selection of class counsel and determination of their compensation.

Over time, of course, law firms that desire to bring class actions have ways other than engaging in joint ventures with other law firms through the plaintiff steering committee to achieve the leverage and litigation risk diversification necessary to play in the big case leagues. The most obvious of these is the same route that law firms generally have employed over the years, namely, increasing their size and capital base. In that way, formerly smaller firms have gained the leverage and diversification to play with larger firms in handling big cases. The same risks face firms on the defense side of litigation, too, as big cases require highly specialized knowledge that is always in danger of losing its currency.

There is also a certain irony in Lieff, Cabraser and Milberg Weiss pointing to leverage and litigation portfolio diversification as a reason for a joint appointment as class counsel in this case. They are, after all, two of the largest and most amply capitalized plaintiff law firms in the country; Milberg Weiss has offices in or near the nation's major centers of securities class actions. These two firms have demonstrated that they know exactly how to go about achieving leverage and risk spreading in their practices. A well-advised representative would insist that firms of this calibre submit separate and independent proposals to represent the class.

## II

On June 16, the court asked counsel to consider three different ways for them to cast proposals for representation of the class:

(A) *Blended hourly rate.* Each firm interested in representing the class would set forth the hourly rate to be charged for the work of its attorneys and paralegals; upon achievement of a recovery for the class, the court or a master under the court's direction would scrutinize the time charges of each firm participating in the prosecution of the case for the class and make an award to each firm based on the respective hours of each determined to be reasonable at the hourly rate established by the successful bid; or

(B) *Percentage fee.* Each bidding firm would submit the percentage of the total recovery that it would accept as compensation for its services in prosecuting the litigation for the class; the total fee would be divided among or between the firms prose-

cuting the class' claims in relation to the hours that each had devoted to the litigation and that are determined by the court or a master to be reasonable; or

(C) *Blended hourly rate with percentage cap.* To prevent the possibility of the fee award consuming an "unreasonable" proportion of the class' recovery, alternative (A) would be employed but each bidding firm would be required to submit in addition to its proposed hourly rate a cap or upper limit on the proportion of the fee award to the total recovery; The hourly rate and fee cap of the successful bidder would determine the total fee award which would be divided among or between the firms prosecuting the class' claims in relation to the proportion that each firm's hours, determined to be reasonable, bore to the total such hours of all firms prosecuting the claims of the class.

■ Approach (A), of course, simply adapts the lodestar approach to a competitive determination. The lodestar approach to determining class counsel's compensation looks to three variables: (1) attorney and paralegal time devoted to the case, (2) reasonable hourly rates applicable to each attorney and paralegal, and (3) a multiplier reflecting the outcome achieved. The latter is simply a retrospective assessment of the risk of non-recovery at the outset of the litigation, a variable that is much easier to assess objectively at the beginning of the case. Approach (A) differs from the lodestar approach in that it requires the bidding firm to estimate elements (2) and (3) at the time of proposing to represent the class, instead of having the judge figure them out at the end of the case.

Approach (B) puts the matter in percentage terms, while approach (C) varies (A) only to the extent that a ceiling on the percentage of the recovery is specified. The analyses necessary to submit an intelligent bid under all three approaches should be identical. A bidder must estimate the range of recovery likely to be achieved and the time and effort required to achieve it.

Needless to say, these estimates are not facilely made. But litigation is really nothing more or less than a process by which the parties and their lawyers obtain information on the value of their legal claims and liabili-

ties. Requiring class action lawyers to make their estimates early in litigation increases the incentives for the lawyers to make these estimates sooner and should, therefore, promote more accurate assessment and prompter resolution of litigation. Calibrating the fee in terms of hours or percentages should make little or no difference. Cf. William J. Lynk, The Courts and the Plaintiffs' Bar: Awarding the Attorney's Fee in Class–Action Litigation, 23 *J Legal Stud* 185 (1994).

Interestingly, however, Mr. Heimann was adamant at the June 24 hearing that approach (A) would be a mystery to plaintiff lawyers, who are unaccustomed to being compensated on a contingent hourly basis. He strongly preferred approach (B). Mr. Heiman's antipathy to approach (A) puzzles the court, as (A) and (B) would seem conceptually to be just different ways of slicing the same loaf.

Mr. Lerach suggested that the court leave the determination of the approach up to the creative imagination of the plaintiff lawyers, an intriguing idea but one that suffers from the obvious apples and oranges problem. Mr. Lerach offered no remedy to that difficulty. None of the lawyers preferred approach (C), or offered any alternatives, except as noted above.

Approach (B) is similar to the method employed by the court in *Oracle,* save, of course, for the fact that the selection of a single firm to represent the class for the duration of the litigation in *Oracle* dispensed with the need for the court to scrutinize class counsel's hours, demonstrating again that class counsel should generally be selected at the outset of the case. See *In re Oracle Securities Litig.,* 852 F.Supp. 1437 (N.D.Cal.1994). Furthermore, approach (B) is the preferred approach of the lawyers here. It will therefore be used in this litigation.

### III

Accordingly, any law firm which seeks to be designated class counsel for claims against one or more defendants shall submit its proposal for such representation on or before July 8, 1994. The proposal shall identify

each defendant from which recovery is sought and set forth:

(a) the firm's experience in securities class action litigation and the background and experience of those lawyers in the firm who, it is anticipated, will be engaged in representing the class in the present litigation;

(b) the bona fide qualifications of the firm to complete the work necessary for representation of the class, including the willingness of the firm to post a completion bond or other security for the faithful completion of its services to the class, and the terms of any such bond or security;

(c) the firm's insurance coverage for malpractice;

(d) the percentage of any recovery the firm will charge in the event of a recovery as fees and costs for all the legal work performed in connection with the case, including that already performed by Lieff, Cabraser and Milberg Weiss;

(e) the terms under which such fees and costs will be charged (i.e., recovery, time and event contingencies); and

(f) a certification on behalf of the firm that (1) its proposal was prepared independently of any other firm, entity or person not affiliated with the firm, (2) no part of the proposal was disclosed to anyone outside the firm prior to filing with the court and (3) the proposal was prepared without direct or indirect consultation with other firms which have filed actions on behalf of the above class.

After the court has received the proposals, class counsel will be selected on the combination of monetary and nonmonetary factors as discussed in the *Oracle* decisions. The total fee for all counsel in the case will be determined by the successful bid; this fee will be divided among class counsel, Lieff, Cabraser and Milberg Weiss, or between these two firms if one of them is the successful bidder, on the basis of hours reasonably devoted and expenses reasonably incurred in the prosecution of the case.

The court has noted the concern expressed by various counsel that the selection process should proceed promptly. The court will endeavor to select class counsel on the basis

of the proposals as soon as reasonably practicable. The court anticipates that a status conference will be scheduled to take place approximately three weeks after the selection is announced.

IT IS SO ORDERED.