**Eli FRIEDMAN, Individually and on behalf of all Others Similarly Situated, Plaintiff,**

v.

**RAYOVAC CORPORATION, Kenneth V. Biller, Kent J. Hussey, David A. Jones, Scott A Schoen, Stephen P. Shanesy, Thomas R. Shepard, Randall J. Steward, Warren C. Smith, Jr. and Merrell M. Tomlin, Defendants.**

**Richard Slatten, Individually and on behalf of all Others Similarly Situated, Plaintiff,**

v.

**Rayovac Corporation, Kenneth V. Biller, Kent J. Hussey, David A. Jones, Scott A Schoen, Stephen P. Shanesy, Thomas R. Shepard, Randall J. Steward, Warren C. Smith, Jr. and Merrell M. Tomlin, Defendants.**

**David Hayes, Individually and on behalf of all Others Similarly Situated, Plaintiff,**

v.

**Rayovac Corporation, Kenneth V. Biller, Kent J. Hussey, David A. Jones, Scott A Schoen, Stephen P. Shanesy, Thomas R. Shepard, Randall J. Steward, Warren C. Smith, Jr., Merrell M. Tomlin and Luis Cancio, Defendants.**

Nos. 02–C–308–C, 02–C–325–C, 02–C–370–C.

United States District Court, W.D. Wisconsin.

Oct. 22, 2002.

**604**

S. Gene Cauley, Robert O'Reilly and Susan Lacava, for Plaintiff.

Donald K. Schott, Quarles & Brady, Madison, WI, James R. Carroll, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, Matthew R. Kipp, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Defendant.

## OPINION AND ORDER

CRABB, Chief Judge.

In these civil actions, plaintiffs allege that defendants violated federal securities law by artificially inflating the price of stock. In an order entered on September 23, 2002, I granted the motion of proposed class members Carol A. LoGalbo, Lawrence M. Cox, Eli Friedman and Harold C. Eck to consolidate case nos. 02–C–308–C, 02–C–325–C and 02–C–370–C and to be appointed as the lead plaintiffs for the proposed class. However, I stayed their motion to appoint three law firms as lead counsel and an additional firm as liaison counsel because they had provided no explanation why multiple lead counsel were necessary to serve the best interests of the class. I gave the lead plaintiffs until October 8, 2002, either to move to appoint a single law firm as lead counsel or provide information that would justify the need for multiple lead counsel.

In its response, the lead plaintiff group agreed to withdraw its motion to appoint Ademi & O'Reilly as liaison counsel but renewed its motion to appoint Milberg Weiss Bershad Hynes & Lerach, LLP, Cauley Geller Bowman & Coates, LLP and Fruchter & Twersky as lead counsel. For the reasons discussed below, the lead plaintiff group's motion to appoint multiple lead counsel will be denied. The lead plaintiff group will have until November 7, 2002, to move to appoint one law firm as lead counsel.

■ To begin with, I agree with the lead plaintiff group that it has the responsibility under 15 U.S.C. § 78u–4(a)(3)(B)(v) to select and retain counsel for the proposed class and that the court should not engage in "micromanagement of the lead plaintiff's performance of his duty." LoGalbo Group's Memo., dkt. # 15, at 2–3. However, the lead plaintiff's choice of counsel is "subject to the approval of the court." 15 U.S.C. § 78u–4(a)(3)(B)(v). As I noted in the September 23 opinion and order, when the lead plaintiff is an institutional investor, most courts have freely granted approval of the lead plaintiff's choice of counsel because in such a case the lead plaintiff will know more than the court about how to choose counsel that will best protect the interests of the class. In addition, an institutional investor generally will be equipped to exercise control over counsel and insure that counsel is serving the class and not his or her own interests. When the lead plaintiff is a small individual investor or a group of such investors, as in this case, there is a greater likelihood that it is not the lead plaintiff that has chosen counsel but rather counsel that has chosen the lead plaintiff. *See* House Conf. Rep. No. 104–369, at 35 *reprinted in* U.S.C.C.A.N. 730, 734 (1995); *see also In re Network Associates, Securities Litigation,* 76 F.Supp.2d 1017, 1032 (N.D.Cal.1999). This merits greater scrutiny by the court of the proposed lead counsel. One of the purposes of the Private Securities Litigation Reform Act is to insure that it is

the plaintiffs and not plaintiffs' lawyers that are controlling the direction of litigation. *In re Donnkenny, Inc. Securities Litigation,* 171 F.R.D. 156, 157 (S.D.N.Y.1997). The concern for a small investor's ability to control the lawsuit is further heightened when proposed lead counsel consists of multiple law firms in different parts of the country.

■ For these reasons and others explained in the September 23 opinion, I directed the lead plaintiff group to provide information to the court justifying the need for multiple lead counsel. Specifically, I stated that, "the lead plaintiff group should be prepared to explain why the resources and expertise of one law firm are insufficient as well as 'describe the lines of authority among the proposed co-counsel, the responsibilities and duties of each, and efforts it has made to avoid problems such as loss of direction of the litigation, duplication of effort, lack of coordination and increase in costs.'" Opinion and order dated September 23, 2002, dkt. # 14, at 26 (quoting Memorandum of Securities Exchange Commission, Amicus Curiae, *appended to In re Baan Co. Securities Litigation,* 186 F.R.D. 214, 229 (D.D.C.1999)).

The lead plaintiff group has failed to address in any meaningful way the concerns raised in the September 23 opinion and order. It has not shown that this litigation is so complex that it requires multiple law firms or that any of the law firms have insufficient resources to provide quality representation. It is also has not provided any information with respect to how the law firms would act in a unified and cohesive manner, prevent duplication of services or remain responsive to the direction of the lead plaintiff group. Instead, it argues that "unless some impropriety can be shown to affirmatively disturb the lead plaintiff's choice of class counsel, that choice must be respected and confirmed." LoGalbo Group's Memo., dkt. # 15, at 3. I disagree that the court must wait until there is proven misconduct to reject the lead plaintiff's choice of lead counsel. When lead plaintiff status is unopposed, as it was in this case, it is unlikely that anyone would draw the court's attention to any "impropriety," even if it existed. Further, the purpose of the act is to prevent litigation abuse, not act

after it has already occurred. To accept the lead plaintiff group's interpretation of the act would effectively prevent the court from exercising its authority to reject proposed counsel in all but the most egregious circumstances. The act contains no such requirement, and I decline to read one in.

The lead plaintiff group has cited cases in which courts granted the lead plaintiff's motion to appoint multiple lead counsel, but those cases contain little discussion regarding appointment of lead counsel and are not persuasive. Further, each involved large or institutional investors and therefore do not support the lead plaintiff's view that the court should blindly accept multiple lead counsel without any inquiry. *See In re Oxford Health Plans, Inc. Securities Litigation,* 182 F.R.D. 42 (S.D.N.Y.1998) (appointing as lead plaintiff group pension fund with losses of approximately $25 million, corporation with losses of approximately $2.75 million, and three individuals with losses of approximately $3.4 million, $3.1 million and $2 million); *Pl Harrington Trust v. RehabCare Group, Inc.,* No. 4:02CV775 RWS (E.D.Mo. October 2, 2002) (appointing as lead plaintiff institutional investor with estimated losses over $2.4 million). In this case, no member of the lead plaintiff group is an institutional investor and no member has estimated losses of more than $1000 so they cannot be compared to the lead plaintiffs in *Oxford Health Plans* and *Pl Harrington.*

The lead plaintiff group has not addressed the myriad cases in which courts have expressed skepticism or have rejected outright a lead plaintiff's motion to appoint multiple lead counsel. *See, e.g., Richard MNI Bell v. Ascendant Solutions, Inc.,* No. Civ.A. 3:01-CV-0166, 2002 WL 638571 (N.D.Tex. April 17, 2002) (rejecting multiple lead counsel because lead plaintiff had failed to show that three law firms were required to manage case); *Yousefi v. Lockheed Martin Corp.,* 70 F.Supp.2d 1061 (C.D.Cal.1999) (appointing one law firm rather than three as lead counsel because three law firms would be too difficult for lead plaintiff to control); *In re Orbital Sciences Corp. Securities Litigation,* 188 F.R.D. 237 (E.D.Va.1999) (noting that "the purpose of the statute favors the choice

of one law firm to act [as lead counsel] absent a specific reason to use multiple firms"); *In re Milestone Scientific Securities Litigation,* 187 F.R.D. 165 (D.N.J.1999) (rejecting motion to appoint multiple lead counsel because lead plaintiff had "not demonstrated how the possible benefits derived from appointing several lead counsel outweigh the complications and increased costs and expenses associated with the litigation by committee approach"); *In re Telxon Corp. Securities Litigation,* 67 F.Supp.2d 803, 817 (N.D.Ohio 1999) (concluding that multiple lead counsel "raises serious questions about these firms' ability to represent 'adequately' the interests of a broad class of plaintiffs"); *see also* Memorandum of Securities Exchange Commission, Amicus Curiae, *appended to In re Baan,* 186 F.R.D. at 229–35–(arguing that courts should "actively exercise their discretion to review multiple lead counsel proposals" and reject proposal if lead plaintiff fails to provide adequate justification of need for multiple lead counsel). These cases raise important concerns. The lead plaintiff group's failure to acknowledge them suggests that appointing multiple lead counsel may not be appropriate in this case.

The lead plaintiff group argues that there is no reason to reject multiple lead counsel because the firms will "leave the prospect of their future fee award up to the Court." LoGalbo Group's Memo., dkt. # 15, at 5. This is an empty concession because, under the act, the court is *required* to limit any award of attorney's fees to "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6). Despite this authority, both district courts and the Securities Exchange Commission have acknowledged that "[p]ost hoc review of a proposed settlement or attorneys' fee award is inevitably difficult and time-consuming." Memorandum of Securities Exchange Commission, Amicus Curiae, *appended to In re Baan,* 186 F.R.D. at 232; *see also In re Nice Systems Securities Litigation,* 188 F.R.D. 206, 222 (D.N.J.1999) (stating that limitation of attorney fees to a "reasonable percentage" "neither guarantees the reasonableness of fees nor the non-duplication of services" in part because "a court's expertise is rarely at its most formidable in the evaluation of counsel fees"). Because of the difficulty in evaluating attorney fees, it may be necessary at the outset of litigation "to structure lead counsel so as to avoid the inevitable inefficiency and expense resulting from an inappropriate multiple lead counsel arrangement." *Nice Systems,* 188 F.R.D. at 223.

However, even if counsel could guarantee the reasonableness of its fees, this would not demonstrate why multiple lead counsel is necessary or even useful in litigating this action. A primary concern is that it will be too difficult for the lead plaintiff group to effectively control the litigation if multiple lead counsel are involved. This concern cannot be resolved by promising not to overcharge the class members. Moreover, as noted above, the lead plaintiff group has failed to explain how it would address that issue.

The remainder of the lead plaintiff group's brief consists of conclusory assertions that the combined resources and expertise of three law firms will serve the best interests of the class, that they will serve as a "unified team" and that the individual members of the lead plaintiff group will be prejudiced if the court rejects multiple lead counsel because at least one member has a direct attorney-client relationship with each of the three law firms. Even assuming these assertions are correct, the lead plaintiff group has failed to present any evidence or argument that the benefits of multiple lead counsel outweigh the burdens. Although insuring that counsel has adequate resources to litigate the action is a legitimate concern, the lead plaintiff group has not suggested that any of the three law firms would be unable to provide competent representation on its own. If necessary, lead counsel can "farm[ ] out work on the case to another law firm because of specialized knowledge, geographic proximity to witnesses or evidence or other comparative advantages." *In re Wells Fargo Securities Litigation,* 156 F.R.D. 223, 227 (N.D.Cal.1994).

Also, the lead plaintiff group does not explain how its members will be prejudiced if all three law firms are not appointed as lead counsel. If the lead plaintiff group is unable

to agree on one law firm to serve as lead counsel, this would be an indication that the group cannot function as a unit and that a single lead plaintiff should be appointed, not that multiple lead counsel are necessary to serve the best interests of the class. The lead plaintiff group must choose lead counsel that will represent the interests of the class as a whole and not just the individual members of the lead plaintiff group.

In sum, the lead plaintiff group has not persuaded me that multiple lead counsel will serve the best interests of the class. Accordingly, the lead plaintiff group's motion to appoint multiple law firms as lead counsel will be denied. However, I adhere to the view that the court is not authorized under the act to select counsel on its own. Therefore, I will give the lead plaintiff group until November 7, 2002 to move to appoint one of the three law firms as lead counsel.

## ORDER

IT IS ORDERED that the lead plaintiff group's motion to appoint multiple law firms as lead counsel is DENIED. The lead plaintiff group may have until November 7, 2002, to move to appoint a single law firm as lead counsel.