Gina VINCELLI, on behalf of herself and all others similarly situated, Plaintiffs,

v.

NATIONAL HOME HEALTH CARE CORPORATION, Steven Fialkow, Frederick H. Fialkow, Warren D. Stowell, and Bernard Levine, Defendants.

Edward J. Rosso, on behalf of himself and all others similarly situated, Plaintiffs,

v.

National Home Health Care Corporation, Steven Fialkow, Frederick H. Fialkow, Warren D. Stowell, and Bernard Levine, Defendants.

Mark Fiore, on behalf of himself and all others similarly situated, Plaintiffs,

v.

National Home Health Care Corporation, Steven Fialkow, Frederick H. Fialkow, Warren D. Stowell, and Bernard Levine, Defendants.

Michael Bihrle, on behalf of himself and all others similarly situated, Plaintiffs,

v.

Warren D. Stowell, and David A. Jesse, Defendants.

Nos. 6:00–CV–172–ORL–28C, 6:00–CV–195–ORL–28C, 6:00–CV–228–ORL–28C and 6:00–CV–274–ORL–28C.

United States District Court, M.D. Florida, Orlando Division.

Aug. 16, 2000.

Steven G. Schulman, Samuel H. Rudman, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, Marc A. Topaz, Schiffrin & Barroway, LLC, Bala Cynwyd, PA, Jack E. Reise, Kenneth Vianale, Maya Saxena, Milberg, Weiss, Bershad, Hynes & Lerach, Boca Raton, FL, Paul J. Geller, Shepherd & Geller, LLC, Boca Raton, FL, for Plaintiffs.

## ORDER

PRESNELL, District Judge.

This cause is before the Court on the Report and Recommendation of the Magistrate Judge entered July 25, 2000 (Doc. 27). Since no objections to this Report were filed within the prescribed time, the Recommendation is confirmed in all respects. It is therefore

**ORDERED and ADJUDGED** that the Report and Recommendation of the Magistrate Judge is hereby adopted as the order of this Court, and the parties shall fully comply with the provisions thereof.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

## TO THE UNITED STATES DISTRICT COURT

This cause is before the Court on motions for consolidation, appointment of lead plaintiffs and lead plaintiffs' counsel and various motions for extensions of time. Having considered the motions and the record in this case, the Court finds as follows.

## I. *BACKGROUND*

This is an action for securities fraud brought on behalf of purchasers of Sunstar Healthcare, Inc. ("Sunstar") stock, seeking damages for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The four actions named above have been brought against the National Home Health Care Corporation ("National"), the publicly-traded parent company of Sunstar, and certain officers of Sunstar. This Court has already consolidated three of the four suits into lead Case No. 6:00–cv–172–Orl–28C. *See* Docket No. 6, Case No. 6:00–cv–172–Orl–28C (the "*Vincelli* action"); Docket No. 13, Case No. 6:00–cv–195–Orl–28C (the "*Rosso* action"); and Docket No. 7, Case No. 6:00–cv–228–Orl–28C (the "*Fiore* action").

The plaintiffs allege that in January 1996 the outpatient medical service business of National formerly known as Brevard Medical Center, Inc. ("Brevard"), and First Health Inc. ("First Health"), was reorganized as Sunstar, a newly formed, wholly-owned subsidiary of National. Subsequently, Sunstar restructured its subsidiaries such that Brevard, Brevard's wholly-owned subsidiary, Sunstar Health Plan Inc., and First Health all became direct, wholly-owned subsidiaries of Sunstar. On May 21, 1996, Sunstar consummated an initial offering of common stock.

Sunstar's common stock traded on NAS-DAQ until February 2, 2000. Docket No. 22 at 6.

The plaintiffs further allege that between November 13, 1998 and February 2, 2000 (the "class period"),[1] defendants made a variety of misrepresentations of material facts. Specifically, plaintiffs claim: 1.) that defendants' policy of delaying claim processing negatively impacted the level of reserves maintained by Sunstar; 2.) that, during the class period, the reported HMO medical costs and the reported liability for medical claims payable were materially understated; and 3.) that contrary to defendants' statements that they would be able to profitably sustain operations, the company is currently faced with liquidation or receivership based on its inability to maintain the reserve levels required for a Florida HMO. Docket No. 22 at 6 – 7.

The plaintiffs also allege that on December 14, 1999, Sunstar announced that the Florida Department of Insurance ("DOI") had filed a lawsuit in Florida Circuit Court alleging significant deficiencies in Sunstar's statutory capital. In response, Sunstar's stock dropped nearly 45 percent from $9.9375 on December 13, 1999 to $5.50 a share on December 14, 1999. On January 20, 2000, Sunstar announced that it would restate its previously-filed financial statements for the nine months ending September 30, 1999, to reflect losses totaling about $8 million to $10 million. The "adjustments" were due mainly to the payment of higher than expected backlog and over-payment of claims under its previous third party administrator, as well as higher administrative costs incurred during the transition of third party administrators and the resulting premium deficiencies. Docket No. 22 at 7.

The plaintiffs further claim that on February 2, 2000, Sunstar announced that the Florida DOI had taken over Sunstar

1. The *Vincelli, Rosso,* and *Fiore* actions allege the class period runs from November 13, 1998 until December 14, 1999, while the *Bihrle* action sets it from April 15, 1999 to February 2, 2000.

Health Plan as a receiver as a result of significant deficiencies in statutory capital. The announcement revealed that the State of Florida would proceed immediately to liquidate Sunstar Health Plan. On the same day, it was revealed that shares of Sunstar were being halted from trading, preventing Sunstar investors from selling their shares to recoup any remaining value in the company. The first of four class actions, *i.e.*, the *Vincelli* action, Case No. 6:00–cv–172–Orl–28C, was filed six days later. Docket No. 22 at 7.

Plaintiffs allege that the price of the Sunstar stock purchased was inflated as a result of alleged misrepresentations and omissions made by Sunstar and its officers and directors concerning the adequacy of Sunstar's reserve. *Vincelli* Complaint, ¶¶ 87, 91. According to plaintiffs, Sunstar was not made a party to the action because the State of Florida Department of Insurance filed a Verified Petition for Order to Show Cause, Injunction and Notice of Automatic Stay prohibiting commencement of any action against Sunstar Health Plan, Inc., a wholly owned subsidiary of Sunstar Healthcare, Inc., or its affiliates. *Vincelli* Complaint, ¶ 7.

Currently pending is movants' motion to consolidate *Bihrle, et al., v. Stowell, et al.,* Case No. 6:00–cv–274–28C with lead Case No. 6:00–cv–172–Orl–28C, and movant's amended motion for appointment of lead plaintiffs (the "Lead Plaintiffs Motion") and appointment of lead counsel (the "Lead Counsel Motion"). *See* Docket No. 21. The Lead Plaintiffs Motion and the Lead Counsel Motion were filed on behalf of Gerald Gordon, Charles C. Bearoff, the Irrevocable Trust of David C. Brodsky, the Irrevocable Trust of Jeffrey H. Brodsky, the Irrevocable Trust of Jessica H. Brodsky, and the Irrevocable Trust of Lee J. Brodsky (the "Proposed Lead Plaintiffs") by both the Proposed Lead Plaintiffs and certain other class members (collectively,

the "movants").[2] Docket No. 21. The Proposed Lead Plaintiffs seek the appointment of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss"), 5355 Town Center Road, Suite 900, Boca Raton, FL 33486, to serve as lead counsel, and the appointment of an Executive Committee consisting of the law firms of Pomerantz Haudek Block & Grossman, LLP, Wolf Haldenstein Adler Freeman & Herz LLP, Starr & Hollman, LLP and Cauley & Geller, LLP with Milber Weiss serving as Chair of the Executive Committee. Docket No. 21. On June 5, 2000, the defendants responded to the Lead Plaintiffs and Lead Counsel motions. *See* Docket Nos. 24, 26. Various motions for extensions of time in which to file a response to the complaint have been filed in the *Vincelli, Rosso,* and *Bihrle,* actions.

## II. *THE LAW*

### A. Consolidation

Pursuant to Local Rule 1.04(b), whenever two cases are concurrently pending before different judges of the Court, and such cases involve common questions of law or fact, the judges involved shall determine whether the *most recently filed case* should be reassigned to the judge to whom the "low numbered" case has been assigned. Similarly, the Federal Rules of Civil Procedure 42(a) provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). Courts have taken the view that considerations of judicial economy favor consolidation. *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284–85 (2d Cir.

---

**2.** The identity of each movant is set forth in Exhibit C of the Amended Affidavit of Kenneth J. Vianale in support of the Lead Plaintiffs' and Lead Counsel's Motions. Docket No. 23.

1990). In securities actions where the complaints are based on the same "public statements and reports" consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced. *Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1211 (S.D.N.Y.1992) (quoting *Lloyd v. Indus. Bio–Test Lab., Inc.,* 454 F.Supp. 807, 812 (S.D.N.Y.1978)).

The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4, (the "PSLRA"), requires the Court to address any outstanding motions to consolidate before considering motions for the appointment of lead plaintiff:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the [lead plaintiff] determination ... until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

15 U.S.C. § 78u–4(a)(3)(B)(ii).

## B. Appointment of Lead Plaintiffs

Congress enacted the PSLRA to remedy perceived abuses in the securities class action litigation. *See In re Party City Sec. Litig.,* 189 F.R.D. 91, 103 (D.N.J.1999) *In re Milestone Scientific Sec. Litig.,* 183 F.R.D. 404, 411 (D.N.J.1998) ("*Milestone I*"); *In re Cendant Corp. Litig.,* 182 F.R.D. 144, 145 (D.N.J.1998). Prior to the enactment of the PSLRA, plaintiffs in securities fraud cases tended to profit irrespective of the culpability of the defendants, most of whom chose settlement over prolonged and expensive litigation. *In re Party City Sec. Litg.,* 189 F.R.D. at 103; *see also Milestone I,* 183 F.R.D. at 411. The purpose behind the PSLRA is to "empower investors so that they, not their lawyers, control private securities litigation by allowing the Court to ensure the transfer of primary control of private securities litigation from lawyers to investors." 189 F.R.D. at 103; *Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398, 407 (D.Minn.1998) (quoting Conference Report on Securities Litigation Reform ("Conference Report"), H.R.Rep. No. 369, 104th Congress, 1st Sess. 31, reprinted in 1995 U.S.C.C.A.N. 679, 683 and 685); *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 546 (N.D.Tex.1997).

Specifically, the PSLRA provides certain guidelines for identifying the plaintiff or plaintiffs who are the most strongly aligned with the class of shareholders, and most capable of controlling the selection and actions of counsel. 189 F.R.D. at 103. *See* Conference Report at 371; *see also Sherleigh Associates LLC v. Windmere–Durable Holdings, Inc.,* 184 F.R.D. 688 (S.D.Fla.1999); *Fischler v. AmSouth Bancorp.,* 1997 WL 118429, at *1 (M.D.Fla. Feb. 6, 1997). In so providing, the PSLRA replaced the outdated practice of selecting representative plaintiffs by a "race to the courthouse," with a selection system which focuses on the adequacy of the representative. 189 F.R.D. at 103–104. *See* Conference Report at 689; *see also Milestone I,* 183 F.R.D. at 412; *Cendant,* 182 F.R.D. at 145–46.

The PSLRA added section 21D to the Exchange Act ("Section 21D"), as amended, 15 U.S.C. § 78u–4. Section 21D sets forth procedures for early notification to potential class members of the filing of the class action. Under section 21D(a)(3), a plaintiff seeking to represent a class:

> Shall cause to be published in a widely-circulated national business-oriented publication or wire service, a notice advising members of the purported class— (I) of the pendency of the action, the claims asserted therein, and the purported class period; (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class

may move the Court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u–4(a)(3)(A)(i).

The PSLRA also altered the procedure by which the lead plaintiff for the purported class is appointed. The plaintiff who is "first to file" is no longer assured of the lead plaintiff position. Section 21D(a)(3)(B)(i) provides:

> the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . .

15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA "ensure[s] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *See In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (citing Conference Report at 730–34).

The selection of the most adequate plaintiff under the PSLRA is governed by a rebuttable presumption:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirement of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Critically, the PSLRA establishes a presumption that the person or entity with the largest financial interest in the relief sought by the class is the most adequate plaintiff for this purpose. 15 U.S.C. § 77z–1(a)(3)(B)(iii)(I). This presumption of adequacy may be rebutted by a showing that the selected plaintiff will "not fairly and adequately protect the interest of the class." Also, the existence of "unique defenses that render such plaintiff incapable of adequately representing the class" will invalidate the presumption 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

■ Whether a named plaintiff will fairly and adequately represent the interests of the class is a question of fact for the district court. *Fischler v. AmSouth Bancorporation,* 1997 WL 118429 (M.D.Fla.1997); *Plummer v. Chemical Bank,* 668 F.2d 654, 659 (2d Cir.1982), citing *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir. 1969). Judges should have access to explore the facts sufficiently in order to make an intelligent determination of the matter. The determination of fair and adequate representation rests on two bases: 1.) common interests between a representative and the class; and, 2.) a willingness and ability to vigorously prosecute the action. *Fischler,* 1997 WL 118429, at *3; *Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir.1973).

■ Further, the named representatives must not possess interests antagonistic to those of the other class members. *Fischler,* 1997 WL 118429, at *3. *Christiana Mortgage Corp. v. Del. Mortgage Bankers Association,* 136 F.R.D. 372, 380 (D.Del.1991). However, there need not be a complete absence of conflict. *Fischler,* 1997 WL 118429, at *3. *Gonzales,* 474 F.2d at 72. Only conflict that is "serious and irreconcilable" will be fatal. 474 F.2d at 72. Most importantly, the purported representative "must demonstrate that she will vigorously prosecute the action by providing both adequate financing and competent counsel." *Sandlin v. Shapiro & Fishman,* 168 F.R.D. 662, 668 (M.D.Fla.1996) (quoting *Brooks v. Southern Bell Tele-*

*phone & Telegraph Co.,* 133 F.R.D. 54, 56 (S.D.Fla.1990)).

## C. Appointment of Lead Counsel

The PSLRA further provides that once the most adequate plaintiff is selected, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). The decision to approve counsel selected by the lead plaintiff is a matter within the discretion of the district court. *See In re Milestone Scientific Sec. Litig.,* 187 F.R.D. 165, 176 (D.N.J.1999) (*"Milestone II "*). The legislative·history of the PSLRA reveals that Congress wished to encourage the exercise of discretion in approving the selection of lead counsel.

> [Congress] does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class.

Conference Report at 685; *In re Party City Sec. Litig.,* 189 F.R.D. 91, 114 (D.N.J. 1999). The exercise of such discretion necessitates an inquiry into the appropriateness of the appointment of more than one law firm; the nature and extent of such inquiry may vary from case to case. 189 F.R.D. at 114; *see also Milestone II,* 187 F.R.D. 165, 174–76. Approval of lead counsel necessarily requires an independent evaluation of, among other considerations, the effectiveness of proposed class counsel to ensure the protection of the class. 189 F.R.D. at 114; *see Milestone II,* 187 F.R.D. 165, 176. A court also must be mindful that the lead plaintiff has significant responsibilities and duties, including the management of the direction of the case. *See Milestone II,* 187 F.R.D. at 176. Disputes concerning the direction of the case should be resolved by the lead plaintiffs. This task can be complicated, or even frustrated, by pressure or input from several lead counsel. *See Milestone II,* 187 F.R.D. at 176.

■ The PSLRA, however, does not expressly prohibit the lead plaintiff from selecting more than one law firm to represent the class. *See* 15 U.S.C. § 78u–4(a)(3); *see also Oxford,* 182 F.R.D. at 50; *Zuckerman v. Foxmeyer Health Corp.,* 1997 WL 314422, at *2 (N.D.Tex.28 Mar. 1997). In certain situations, the appointment of multiple lead counsel may better protect the interests of the plaintiff class. Where a single firm lacks the resources or expertise to prosecute an action, for example, the approval of multiple lead counsel may expedite litigation. *See Oxford,* 182 F.R.D. at 49 (where proposed law firms were small and litigation was potentially "costly and time-consuming," the "sharing of resources and experience" would ensure a more expeditious resolution of the action); *In re Wells Fargo Sec. Litig.,* 156 F.R.D. 223, 226 (N.D.Cal.1994) ("[The] plaintiff law firms, which usually take cases on a contingent fee basis, join together to prosecute major complex cases because doing so allows them to leverage their resources and spread the risks of unfavorable outcomes."); *but see Milestone II,* 187 F.R.D. 165, 176 (observing the approval of multiple lead counsel may engender inefficiency in class action litigation).

■ The potential for duplicative services and the concomitant increase in attorneys' fees work against the approval of more than one law firm, especially in cases in which one law firm has the proven ability to adequately manage and litigate securities class actions. 189 F.R.D. at 115; *see also Milestone II,* 187 F.R.D. 165, 176; *Chill,* 181 F.R.D. at 413 (the structure of proposed leadership should not be "too distended to efficiently manage the prosecution of th[e] action"); *Reiger v. Altris Software, Inc.,* 1998 U.S.Dist. LEXIS 14705, at *15–16, *18 (S.D.Cal. Sept. 11, 1998) (observing the enlargement of the number of lead counsel may "unnecessarily increase the time and expense spent on preparing and litigating the case"); *Ballan v. Upjohn Co.,* 159 F.R.D. 473, 491

(W.D.Mich.1994) (quoting Manual for Complex Litigation 2nd § 20.22 at 16) (stating "the number [of lead counsel] should not be so large as to hamper the unity of direction that is needed").

■ Additionally, where more than one lead counsel is appointed, there is the potential they may ultimately seize control of the litigation, an occurrence the PSLRA intended to foreclose. As discussed, PSLRA was designed, in part, to effectuate the transfer of control of securities class actions from the lawyers to the investors. *See* Conference Report at 685. Accordingly, those seeking the appointment of more than one law firm must demonstrate the lead plaintiff will be able to withstand any limitation on, or usurpation of, control, and effectively supervise the law firms acting as lead counsel. *See Milestone II*, 187 F.R.D. at 176–77.

The initial selection of counsel should also be the result of independent decision-making by the lead plaintiff. In *Milestone I*, it was observed "unless there has been active, effective client participation in the [selection] process, it is possible that the counsel arrangement may simply reflect bargaining among lawyers for their own stake in the case, and not serve the best interests of the class." 187 F.R.D. at 177–78.

### III. *ANALYSIS*

#### A. Consolidation

All plaintiffs have moved to consolidate the *Bihrle* action with lead Case No. 6:00–cv–172–Orl–28C. Docket No. 21. Defendants do not oppose consolidation and agree that consolidation of the *Bihrle* action is essential for the efficient administration and management of this case. Docket Nos. 18, 19, 24, and 26.

All of the shareholder actions against National Home and Sunstar's officers share both factual and legal issues in common. Consolidation, moreover, will prevent unnecessary expense and delay. Consolidation is therefore appropriate un-der Rule 42(a) of the Federal Rules of Civil Procedure. Accordingly, the *Bihrle* action should be consolidated with lead Case No. 6:00–cv–172–Orl–28C, which will be re-captioned, as agreed by all parties, as *"In re Sunstar Healthcare Securities Litigation,"* Case No. 6:00–cv–172–Orl–28C.

#### B. Appointment of Lead Plaintiff

■ The movants seek the appointment of class members Gerald Gordon, Charles C. Bearoff, the Irrevocable Trust of David C. Brodsky, the Irrevocable Trust of Jeffrey H. Brodsky, the Irrevocable Trust of Jessica H. Brodsky, and the Irrevocable Trust of Lee J. Brodsky as lead plaintiffs in this consolidated case. Docket No. 21. The certifications filed in this consolidated case demonstrate that, during the class period, some of the purported class members purchased unrestricted Sunstar common stock in the secondary market, while others bought unregistered, restricted Sunstar Series A preferred stock and warrants in a private placement completed on April 16, 1999 ("the Private Placement"). *Compare* Certifications of plaintiff Vincelli and Proposed Lead Plaintiff Gordon who purchased common stock in the open market at varying prices with certifications of plaintiff Rosso and Proposed Lead Plaintiff Bearoff who purchased preferred stock in the Private Placement. *See* Vianale Aff. at Exh. C, Docket No. 23.

Movants propose co-lead plaintiffs who claim to be representative of each of the two classes of purchasers on whose behalf the actions were brought—Gordon, who purchased Sunstar common stock on the open market; and Bearoff and the four Irrevocable Trusts, which bought preferred stock in the Private Placement. *See, e.g.,* Certifications of Gordon and Bearoff attached to Vianale Aff. at Exh. C, Docket No. 23. Thus, the Proposed Lead Plaintiff represent those who purchased either Sunstar common stock or preferred stock during the class period. Defendants

do not oppose the proposed designation of lead plaintiffs. Docket No. 26.

### 1. *The Notification Requirement*

In the instant case, the notification requirement has been met. The *Vincelli* action was the initial action filed. Pursuant to Section 21D(a)(3)(A)(i), the plaintiff in the *Vincelli* action published the notice of pendency of the instant action (the "Notice of Pendency") in a widely-circulated national business-oriented wire service, the Business Wire on February 8, 2000.[3] *See* Notice of Pendency, attached to Vianale Aff. as Exh. B, Docket No. 23. The Notice of Pendency adequately apprised members of the proposed class of their right to move the Court to serve as lead plaintiff or plaintiffs no later than sixty days from the date of publication. *See* Docket No. 23.

Pursuant to 15 U.S.C. § 78u–4(a)(3)(A)(i), the time period in which class members may move to be appointed lead plaintiffs herein expired on April 10, 2000. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i). There is no dispute as to the timeliness of the Proposed Lead Plaintiffs' motion filed on April 10, 2000, and amended on May 18, 2000. The Proposed Lead Plaintiffs' motion was timely filed.

### 2. *The Largest Financial Interest Requirement*

As discussed, a presumption of adequacy arises where the "group of persons" having the largest financial interest among the named plaintiffs in the class action seeks appointment as lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb). Pursuant to 15 U.S.C. § 78u–4(a)(3)(B), the proposed lead plaintiffs have duly signed and filed certifications stating that they have reviewed the complaints filed in the actions and are willing to serve as representative parties on behalf of the class. *See* Vianale Aff. at Exh. C, Docket No. 23. As stated in their signed certifications, the proposed lead plaintiffs purchased the securities of Sunstar during the class period (when prices were allegedly artificially inflated by false and misleading statements) and have estimated losses of over $1,794,450.44,[4] as a result of defendants' alleged misconduct. *See* Vianale Aff. at Exh. C and D, Docket No. 23 (calculating estimated damages based upon the number of shares held at the close of the proposed class period multiplied by the purchase amount). The Proposed Lead Plaintiffs' investment in the Sunstar stock collectively make them the largest financial interest in this action, as suggested in the Reform Act. 15 U.S.C. § 77z–1(a)(3)(B)(iii)(II)(bb). Movants assert that the Proposed Lead Plaintiffs collectively account for a predominant financial interest within the class. *See* Docket No. 22 at 5. From review of the submissions of the Proposed Lead Plaintiffs, it appears the Proposed Lead Plaintiffs, collectively, have the largest financial interest in the instant litigation.

### 3. *Rule 23 Requirements*

■ The PSLRA requires the Proposed Lead Plaintiffs demonstrate they "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc); *see also Chill,* 181 F.R.D. at 408 ("Ultimately, the PSLRA channels the concern, as to the adequacy of representation, through Rule 23."). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is

---

**3.** The Business Wire appears to be a business-oriented wire service within the meaning of the PSLRA. *See, e.g., Greebel,* 939 F.Supp. at 62; *First Merchants Acceptance Corp.;* 1997 WL 461036, at *4 ("[T]he court must make its own interpretation as to what the term ['widely-circulated'] means.").

**4.** The estimated damages value is included herein to demonstrate the potential financial interest of the proposed lead plaintiffs in the instant action. The inclusion of this value does not preclude a later challenge to the appropriateness of this value or its method of calculation.

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The Proposed Lead Plaintiffs have sufficiently demonstrated, at this preliminary stage, the requisite typicality and adequacy. The Proposed Lead Plaintiffs have satisfied the typically requirement by: 1.) suffering the same injuries as the absent class members; 2.) suffering damages as a result of the same course of conduct by defendants; and 3.) maintaining that the claims are based on the same legal issues as the absent class members. (Docket No. 20), *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985). The Proposed Lead Plaintiffs purchased Sunstar securities during the relevant time period at prices allegedly artificially inflated by the false and misleading statements issued by defendant and suffered damages thereby. In short, the Proposed Lead Plaintiffs' interests are alleged with the members of the class, and there is no evidence of any antagonism between Proposed Lead Plaintiffs' interest and those of the other members of the class. There is a well-defined community of interest in the questions of law and fact between the movants and other plaintiffs in this case.

### C. Appointment of Lead Counsel

█ The Proposed Lead Plaintiffs seek approval of their selection of the law firm of Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss"), 5355 Town Center Road, Suite 900, Boca Raton, FL 33486, to serve as lead counsel. Docket No. 21. In addition, the Proposed Lead Plaintiffs also seek the appointment of an Executive Committee consisting of the law firms of Pomerantz Haudek Block & Grossman, LLP, Wolf Haldenstein Adler Freeman & Herz LLP, Starr & Hollman, LLP and Cauley & Geller, LLP with Mil-

ber Weiss serving as Chair of the Executive Committee. Defendants object to the appointment of an Executive Committee. *See* Docket No. 26.

This Court notes that the use of an Executive Committee of law firms seems contrary to the PSLRA's goal of turning control of the ligation from the attorneys to the lead plaintiff. *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 586 (N.D.Cal. 1999). In *Sherleigh*, the Southern District of Florida recognized that the existence of an Executive Committee can make trying a class action cumbersome. 184 F.R.D. at 692 (finding that consortium of ten law firms not in best interest of class and conducting a bidding process to select lead counsel).

It appears that the appointment of an executive committee consisting of five firms will not promote the efficient prosecution of this case, and is not warranted. Having five firms making decisions for or with the plaintiffs could increase the difficulty of arriving at decisions and monitoring the case. The Proposed Lead Plaintiffs have not shown that there is low risk in the instant litigation of unnecessary and wasteful efforts by counsel that would result from the litigation by committee approach. The Proposed Lead Plaintiffs also have failed to show that the committee approach will not usurp control of the litigation or that the Proposed Lead Plaintiffs will not experience difficulty in controlling the instant litigation if the five firms are appointed to a committee. This Court has received no assurance from Proposed Lead Plaintiffs that the appointment of the executive committee will not lead to duplicative efforts by counsel, absence of coordination or delay, or increased costs to the Proposed Class. In short, the Proposed Lead Plaintiffs have not demonstrated sufficient need justifying the approval of a five-member committee.

Milberg Weiss appears able to singly undertake the responsibilities of lead counsel in this action. *See* Vianale Aff. at Exh. E., Docket No. 23. It further appears that

Milberg Weiss has sufficient resources and flexibility to effectively manage the litigation for the entire Plaintiff Class. *See* Vianale Aff. at Exh. E., Docket No. 23. A review of the firm resume of Milberg Weiss reveals it to be qualified in the general area of Federal securities laws. *See* Vianale Aff. at Exh. E., Docket No. 23. It appears Milberg Weiss has been lead or co-lead counsel in more than 40 securities class actions. The firm resume illustrates Milberg Weiss has successfully prosecuted numerous securities fraud class actions on behalf of investors, resulting in recoveries in excess of $2 billion. From a review of the nature, scope and likely demands of this case, it appears Milberg Weiss is capable of handling all aspects of the litigation.[5]

While appointment of several firms as lead counsel may at times promote effective management of a class action, this is not such a case. Lead Plaintiffs have not demonstrated how the possible benefits derived from appointing several lead counsel outweigh the complications and increased costs and expenses associated with the litigation by committee approach. Accordingly, there is no reason to burden the Plaintiff Class with additional counsel fees, delay or confusion which would result from the appointment of multiple counsel. Milberg Weiss is approved as sole lead counsel for the Plaintiff Class. As noted, this decision does not prohibit Milberg Weiss from farming out work to other firms because of expertise, proximity to witnesses or evidence or to promote efficiency or expedition.

## IV. *CONCLUSION*

For the foregoing reasons, it is

**RECOMMENDED** that the Amended Motion for Consolidation [Docket No. 21]

be **GRANTED** and that all subsequent papers, pleadings, and motions be filed under the case number of the lowest-numbered case, *Vincelli, et al. v. National Home Health, et al.,* Case No. 6:00–cv–172–Orl–28C, which will be re-captioned, as agreed by all parties, as *"In re Sunstar Healthcare Securities Litigation,"* Case No. 6:00–cv–172–Orl–28C. It is

**FURTHER RECOMMENDED** that the district court enter an order allowing Lead Plaintiffs, defined below, to file, on or before **September 7, 2000,** an amended complaint in Case No. 6:00–cv–172–Orl–28C, effectuating the consolidation of the *Vincelli, Rosso, Fiore,* and *Bihrle* actions. It is

**FURTHER RECOMMENDED** that the district court enter an order directing the parties to file a Case Management Report pursuant to Local Rule 3.05 on or before **October 1, 2000.** It is

**FURTHER RECOMMENDED** that the district court enter an order directing the government to file its answer to the amended complaint in Case No. 6:00–cv–172–Orl–28C on or before **October 23, 2000.** It is

**FURTHER RECOMMENDED** that the Amended Motion for Appointment of Lead Plaintiffs [Docket No. 21] be **GRANTED.** The designated lead plaintiffs will be Gerald Gordon, Charles C. Bereft, the Irrevocable Trust of David C. Brodsky, the Irrevocable Trust of Jeffrey H. Brodsky, the Irrevocable Trust of Jessica H. Brodsky, and the Irrevocable Trust of Lee J. Brodsky. It is

**FURTHER RECOMMENDED** that the Amended Motion for Appointment of Lead Counsel [Docket No. 21] be **GRANTED** in part and **DENIED** in part. Mil-

---

5. Milberg Weiss may, in its capacity as lead counsel, distribute non-duplicative work assignments to non-lead counsel so as to facilitate the orderly and efficient prosecution of the action. *See In re Wells Fargo Sec. Litig.,* 156 F.R.D. at 227 (appointing a single lead counsel but stating the firm may "farm[ ] out work on the case to another law firm because

of specialized knowledge, geographic proximity to witnesses or evidence or other comparative advantages, or even to spread risk"); *Malin v. Ivax Corp.,* No. 96–1843, Order at 8 (S.D.Fla. Nov. 1, 1996) (urging the utilization of other firms retained in the action by other plaintiffs).

berg Weiss should be approved as sole lead counsel for the Plaintiff Class. Lead Plaintiff's request for the appointment of an Executive Committee of counsel should be denied. It is

**FURTHER ORDERED** that all pending motions in the following cases are **DENIED:** 1.) *Rosso, et al., v. National Home Health Care Corporation, et al.,* Case No. 6:00–cv–195–Orl–28C [Docket Nos. 8, 12]; *Bihrle, et al., v. Stowell, et al.,* Case No. 6:00–cv–274 [Docket No. 7]. Leave is granted for parties to renew such motions by filing them in the consolidated Case No. 6:00–cv–172–Orl–28C, now captioned *"In re* Sunstar Healthcare Securities Litigation." It is

**FURTHER ORDERED** that the various motions for extensions of time filed in Case No. 6:00–cv–172–Orl–28C [Docket Nos. 7, 8, 10] are **DENIED** as moot. It is

**FURTHER ORDERED** the original Motion to Consolidate, for the Appointment of Lead Plaintiff, and Appointment of Lead Counsel [Docket No. 11] is **DENIED** as moot.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.