Marcela **CORDOVA**, George Flores, Henry Iurman, Marcos Mustieles, and Katia Ocampo, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**LEHMAN BROTHERS, INC.,** a New York corporation, Merrill Lynch & Co., Inc., a Delaware corporation, Raymond James Financial Services, Inc., a Florida corporation, Oliva Investment Group, Inc., a Florida corporation, Sun Trust Banks, Inc., a Georgia corporation, HSBC Bank, U.S.A., Luis Cornide, and Robert A. De La Riva, Defendants.

No. 05–21169–CIV.

United States District Court, S.D. Florida.

Aug. 17, 2006.

---

Harley S. Tropin, Esq., David P. Milian, Esq., Thomas A. Tucker Ronzetti, Esq., Kozyak Tropin & Throckmorton, P.A., Coral Gables, Victor M. Diaz, Jr., Esq., Aaron S. Podhurst, Esq., Podhurst Orseck, P.A., Miami, FL, for Plaintiff.

Christian Bartholomew, Esq., A.C. Brooke Clagett, Esq., Morgan Lewis & Bockius LLP, Washington, D.C., Patricia Gorham, Esq., Richard L. Robbins, Esq., Terry R. Weiss, Esq., Sutherland Asbill & Brennan, LLP, Atlanta, GA, Rudolph Aragon, Esq., White & Case LLP, Richard Critchlow, Esq., Harry Schafer, Esq., Kenny Nachwalter P.A., Miami, Theresa L. Davis, Esq., Jonathan S. Feld, Esq., David H. Kistenbroker, Esq., Katten Muchin Rosenman LLP, Chicago, IL, Thomas E. Scott, Esq., Cole Scott & Kissane, P.A., Marty Steinberg, Esq., Samuel A. Danon, Esq., Hunton & Williams LLP, Miami, FL, of Each Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiffs' Motion to Be Appointed Lead Plaintiffs and for the Approval of Their Selection of Lead Counsel and Incorporated Memorandum of Points and Authorities in Support (DE # 236), Class Plaintiffs' Motion for Time in Which to File an Amended Complaint and to Stay the Current Briefing Schedule (DE # 239), Class Plaintiffs' Motion for Leave to File Amended Class Action Complaint (DE # 241), and Class Plaintiffs' Third Amended Complaint (DE # 242).

UPON CONSIDERATION of the Motions, the relevant portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order:

### I. BACKGROUND

*Factual History*

On March 28, 2005, the Securities and Exchange Commission commenced a civil action in this Court against Pension Fund of America, L.C., PFA Assurance Group, Ltd., PFA International Ltd., Claren TPA, LLC, Robert A. De La Riva and Luis M. Cornide (DE # 1 in Case No. 05–20863–CIV–MOORE). On March 28, 2005 and April 15, 2005 respectively, this Court entered a Temporary Restraining Order (DE # 15 in Case No. 05–20863–CIV–MOORE) and an Order of Preliminary Injunction (DE# 58 in Case No. 05–20863–CIV–MOORE) freezing those

Defendants' assets. This Court also entered an Order Appointing Receiver and an Amended Order Appointing Receiver (DE#'s 16, 57 in Case No. 05–20863–CIV–MOORE).

On April 28, 2005 Plaintiffs filed this action (DE #1 in Case No. 05–21169–CIV–MOORE). Plaintiffs amended their complaint on June 22, 2005 (DE #38). The Plaintiffs in this case are Marcela Cordova, Jorge Flores, Henry Iurman, Marcos Mustieles and Katia Ocampo, individually and on behalf of all others similarly situated (collectively "Plaintiffs"). Am. Compl. ¶ 4–7. The Defendants are Lehman Brothers, Inc. ("Lehman Brothers"); Merrill Lynch & Co., Inc. ("Merrill Lynch"); Raymond James Financial Services, Inc. ("Raymond James"); Oliva Investment Group, Inc. ("OIG"); SunTrust Banks, Inc. ("SunTrust") and HSBC Bank, U.S.A. ("HSBC") (collectively "Defendants"). *Id.* ¶ 8–13. Plaintiffs bring this action against Defendants for breach of fiduciary duty and knowing participation in and substantial assistance to the fraudulent scheme perpetrated by Pension Fund of America, its affiliated entities and principles ("PFA") which defrauded investors out of at least $127 million. *Id.* ¶ 1. Plaintiffs allege that PFA and its affiliated entities are unregistered investment advisors that operated in Coral Gables, Florida. *Id.* ¶ 18.

Plaintiffs allege that PFA sold retirement trusts to investors throughout the world, principally in Latin America. *Id.* ¶ 17. PFA marketed itself by touting the safety of investing through them with the Defendant financial institutions as trustees. *Id.* ¶ 18. PFA offered two retirement trust plans: the Liberty Trust, a monthly or annual contribution plan and the Capital Trust, a one-time contribution plan. *Id.* ¶ 19. Approximately 85% of all inventors chose the Liberty Trust. *Id.* The Liberty Trust required annual contributions of between $1,000 and $20,000 for ten to fifteen years and imposed significant early withdrawal penalties. *Id.* The Capital Trust was a ten-year plan that required a minimum one-time contribution of $10,000. *Id.* The investment component of both plans provided investors with a choice of eight mutual funds offered by well-known U.S. mutual fund companies. PFA combined the mutual funds with a term life insurance component, provided through PFA Assurance, which purported to give investors a secure return on their investments. *Id.*

PFA affiliated itself with Defendants and touted its relationship with these well-known financial institutions, whose post-investment participation was intended to ensure the safe handling of the investors' funds. *Id.* ¶ 20. Plaintiffs allege that the principal attraction of PFA's retirement trusts was the promise that major U.S. financial institutions would be the custodians and/or trustees of the investors' funds. *Id.* Plaintiffs allege that they entered into contractual agreements with Defendants for atypical custodial and trustee services. *Id.* ¶ 21. Plaintiffs allege that with Defendants' knowledge, PFA tricked Plaintiffs into retaining their investments with PFA. *Id.* ¶ 22.

Plaintiffs contend that the money invested through PFA was diverted and dissipated through a massive fraud perpetrated by PFA with the knowledge and substantial assistance of Defendants. Post-investment PFA improperly pooled investor funds, and thereby failed to segregate each individual retirement trust established by Plaintiffs. *Id.* ¶ 25. Post-investment, PFA improperly diverted millions of dollars of investor funds to non-investment purposes and failed to disclose to investors that it was siphoning as much as 90% of investor funds for non-investment purposes. *Id.* ¶ 26. Plaintiffs allege that post-investment PFA charged excessive front-load fees on the mutual fund component of the retirement trusts and failed to disclose to investors the amount of fees charged. *Id.* ¶ 27. Post-investment Defendants selected certain mutual funds with excessive front-load fees and redirected investor funds held in trust into the mutual funds selected by Defendants. *Id.* PFA charged some investors average fees and costs of 80% on first-year contributions, placing only a small fraction of investor funds, post-investment, in designated mutual funds. *Id.* In other cases PFA did not place any of the investors' contributions into their designated mutual funds and used all of the inves-

tors' funds to pay commissions and other fees and costs. *Id.*

Plaintiffs further allege that post-investment PFA sent investors fraudulent account statements which misrepresented the status and balance of the investors' retirement trust. *Id.* ¶ 28. The statements failed to disclose the actual amount placed by PFA, post-investment, in the mutual funds designated by investors. *Id.* By not disclosing the deducted commissions, fees and costs, in the statements, the post-investment annual statements vastly overstated the actual amount of investor holdings. *Id.*

Plaintiffs allege that SunTrust played the following role in the PFA fraud: SunTrust, which provided services to PFA from 1999 until 2001, was the first financial institution to offer secure post-investment handling of investor funds. *Id.* ¶ 31. Plaintiffs allege that SunTrust rendered substantial assistance to PFA's fraud by knowingly allowing its corporate name, corporate logos, and reputation to be used by PFA to assure investors of the safety of their investment. *Id.* ¶ 32. Plaintiffs allege that SunTrust further rendered substantial assistance to PFA's fraud by directly issuing certificates and statements under the SunTrust logo and seal, and signed by a SunTrust bank officer, which contained false and/or misleading account balances. *Id.* ¶ 33. Plaintiffs allege that SunTrust further rendered substantial assistance to PFA's fraud by becoming aware and failing to alert investors of false representations being made to investors regarding the safety and security of their retirement trusts established at SunTrust through PFA. *Id.* ¶ 34. Plaintiffs allege that SunTrust further rendered substantial assistance to PFA's fraud by falsely fielding, responding to and assuaging investor concerns regarding SunTrust's role in securing the safety of their retirement trusts and the security of their investment. *Id.* ¶ 35.

Plaintiffs allege that Merrill Lynch, Raymond James, OIG and Lehman Brothers played the following role in the PFA fraud: following SunTrust's termination of its relationship with PFA, Merrill Lynch, Raymond James and OIG as Raymond James's exclusive agent in Miami, and Lehman Brothers agreed to serve as post-investment trustees and/or custodians of the funds placed through PFA. *Id.* ¶¶ 36, 40, 44. Like SunTrust, the other Defendants, Merrill Lynch, Raymond James, OIG and Lehman Brothers agreed to ensure the safe handling of investor funds, post-investment. *Id.* ¶¶ 37, 41, 45. In addition to providing PFA certain banking services, Merrill Lynch, Raymond James, OIG and Lehman Brothers rendered substantial assistance to PFA's fraud by knowingly allowing their corporate names, corporate logos and their corporate reputations to be used by PFA to assure investors of the safety of their investments. *Id.* ¶¶ 38, 42, 46. Plaintiffs further allege that Merrill Lynch, Raymond James, OIG and Lehman Brothers rendered substantial assistance to PFA's fraud by falsely fielding, responding to and assuaging investor concerns regarding Merrill Lynch, Raymond James, OIG and Lehman Brothers' roles in securing the safety of their retirement trusts and the security of their investment. *Id.* ¶¶ 39, 43, 47.

Plaintiffs allege that HSBC played the following role in the PFA fraud: In 2003 HSBC solicited PFA to serve as the principal post-investment trustee of investor funds placed through PFA. *Id.* at ¶ 48. Plaintiffs allege that HSBC rendered substantial assistance to PFA's fraud by falsely fielding, responding to and assuaging investor concerns regarding HSBC's role in securing the safety of their retirement trusts and the security of their investments. *Id.* ¶ 50. Plaintiffs allege that HSBC rendered further substantial assistance to PFA's fraud by authorizing duplicative and conflicting "Guide to Plan Provisions" documents provided to investors post-investment, which misrepresented the duties of HSBC, misled investors regarding the fees and costs being charged by PFA and HSBC and even purporting to release PFA from liability for the misappropriation of investor funds. *Id.* ¶ 51.

Plaintiffs allege that HSBC rendered substantial assistance to PFA's fraud by redirecting the investment component of PFA's "retirement trusts" into mutual funds of HSBC's choosing and by writing a letter to various mutual fund companies in 2004 directing those companies to recalculate their

front-load fees so as to charge the maximum fees to investors. *Id.* ¶ 52.

Plaintiffs allege that HSBC rendered further substantial assistance to PFA's fraud by authorizing HSBC personnel to travel through Latin America to meet with PFA's sales force and investors, to falsely reassure them of the safe handling of their funds, the security of their investment, the integrity of PFA's operations and HSBC's role in overseeing the safety of investor retirement trusts. *Id.* ¶ 53. Additionally, HSBC authored and allowed PFA to send a letter in the fall of 2004, falsely assuaging investor concerns regarding the accuracy of account statement information, misrepresenting HSBC's role in preparing the account statement information and falsely vouching for the integrity of the retirement trust balances disclosed to investors. *Id.* ¶ 54. HSBC became aware of the false representations being made to investors regarding the safety and security of their retirement trusts. *Id.* ¶ 55. HSBC assisted PFA in circumventing foreign currency, banking and insurance regulations governing PFA's activities in Latin America. *Id.* ¶ 56. HSBC sent a letter dated October 27, 2003, on HSBC letterhead and signed by Joseph Brennan, Vice President of HSBC ("Brennan"), informing investors that "Pension Fund of America has signed a Master Trust Agreement with HSBC Bank" and that pursuant to that Agreement. "HSBC Bank will serve as Trustee under directions from PFA with regard to the Investment Components of PFA's agreement with you." Brennan's letter did not fully disclose all the material facts about PFA then known to HSBC, giving Plaintiffs a false sense of security about their investments and thereby inducing them to retain their investments at PFA. *Id.* ¶ 57.

### Procedural History

The original complaint in this case was filed on April 28, 2005, with Samuel Puterman as the named lead plaintiff (DE # 1). The complaint states that Mr. Puterman invested $100,000.00 with PFA. Plaintiff's counsel then communicated its intention to file an Amended Class Action Complaint (DE # 35), requiring Defendants to request extensions to answer the complaint while waiting for Plaintiff to file the First Amended Class Action Complaint (DE # 38), which finally occurred on June 22, 2005, with new lead plaintiffs named. In the First Amended Class Action Complaint, the new lead plaintiffs alleged various amounts of damages, the largest identified amount being approximately $60,000.00 for Marcos Mustieles and the smallest being approximately $6,500.00 for Henry Iurman, with the other plaintiffs not alleging even approximate amounts.

After many moons had passed and motions had been filed, these class plaintiffs then filed a motion seeking, *inter alia,* leave to amend the First Amended Complaint by interlineation (DE # 117), which this Court granted in its Order of October 31, 2005 (DE # 125). After dispositive motions to dismiss and respective replies and responses were filed, the Court entered its Order of January 17, 2006 (DE # 168) which dismissed the First Amended Complaint without prejudice and instructed plaintiffs to file a second amended complaint within ten (10) days. After extensions were granted to the plaintiffs, they filed the Second Amended Complaint on February 13, 2006 (DE # 189), which also added Defendants Robert de la Riva and Luis Cornide. The Financial Institution defendants, after receiving an extension, then filed motions to dismiss the Second Amended Complaint (DE # 217–222, 224). The plaintiffs then requested, and were granted, an extension of time to reply (DE # 233, 234).

Rather than file a reply, however, plaintiffs filed various other motions, affidavits, and notices. First, plaintiffs filed the Affidavit of Tucker Ronzetti (DE # 235) with attached "true and correct copies" of: A.) the Notice of Pendency of Class Action published via wire service on the *Business Wire* on February 21, 2006 (the "Notice"); and B.) the "Firm Resumes" of Kozyak Tropin & Throckmorton, P.A., and Podhurst, Orseck, P.A. In the Notice, potential plaintiffs are advised of this litigation. One might understand their confusion, however, at being told that the criterion for their eligibility is whether they "purchased the securities of PFA on or after January 1, 1999, 2006[sic], and sustained damages...". Affid. Tucker

Ronzetti, Ex. A. ¶ 2 The sentence continues, notably, to state that potential plaintiffs "may, no later than April 15, 2006[,] request that the Court appoint [the potential plaintiffs] as lead plaintiff." *Id.* Exhibit B of this Affidavit is the resumes of Kozyak Tropin & Throckmorton, P.A., and Podhurst, Orseck, P.A., offered to demonstrate to the Court each firm's capability of representing the purported class plaintiffs.[1] Failing to follow the date set forth in either its published Notice or the sixty (60) day window set forth in 15 U.S.C. § 78u–4(a)(3)(A)(i)(II), a new class of plaintiffs filed a Motion to Be Appointed Lead Plaintiffs and for the Approval of Their Selection of Lead Counsel and Incorporated Memorandum of Points an Authorities in Support (DE # 236), on April 24, 2006. On April 28, 2006, a Notice of Filing **Amended** Motion to Be Appointed Lead Plaintiffs and for the Approval of Their Selection of Lead Counsel and Incorporated Memorandum of Points an Authorities in Support (DE # 237) was filed. Attached to this Notice was an Amended Motion along with a Proposed Order, presumably intended for the undersigned's signature, and not that of Michael K. Moore. Subsequently, the new proposed class of plaintiffs filed PSLRA Certifications (DE # 255, 256, 268, 269).

## II. LEGAL STANDARD

■ The legal standard on whether to allow a plaintiff to amend a complaint is set forth in Fed.R.Civ.P. 15(a). According to the Rule, a party is allowed to amend its pleading once as a matter of course, but "[o]therwise a party may amend the party's pleading only be leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Leave may be denied "because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party by virtue of allowance of the amendment, [or] futility of amendment.' " *Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir.2005) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

## III. ANALYSIS

Plaintiffs seek here to amend or alter the complaint in this case for the fourth time. The first time, the then-Defendants requested and received extensions to file a responsive pleading so as to afford Plaintiffs the opportunity to take advantage of the "free" amendment provided for in Fed.R.Civ.P. 15(a). The second alteration was to correct an error of Plaintiffs'. The third amendment was in response to this Court's Order which highlighted the legal deficiency of the First Amended Complaint. The most recent proposed amendment to the complaint comes outside of either the statutory or the Plaintiffs' own published time limit for objections to the purported class plaintiffs (the Cordova plaintiffs) to be filed with the Court. Further, the request comes after an extension of time to respond to the Financial Institution Defendants' Motions to Dismiss.

■ The record and the pleadings demonstrate that Plaintiffs' actions are for the purpose of undue delay and have a dilatory motive. Plaintiffs' counsel provides the Court with no explanation of the necessity of the naming of new lead plaintiffs, of their discovery during the notice period or any other reason why the Court should determine the new lead plaintiffs "to be most capable of adequately representing the interests of class members", 15 U.S.C. § 78u–4(a)(3)(B)(i), beyond the declaration of Plaintiffs' counsel that it is "none of Defendants' business." Pl. Reply in Support of Am. Mot. App. Lead Pl. (DE # 254) at 3, 5. It is however, the Court's charge, and therefore its business, to determine which plaintiffs will

---

1. The firm resume/profile of Kozyak Tropin & Throckmorton, P.A., leaves the reader with more questions than answers. For example, on page 2, the reader is left wondering in which cases the firm successfully prosecuted claims against First Union Bank and Key Bank and to question, along with the writer, where Insert A might be.

Further, page 12 demonstrates either a lack of perfect knowledge or profound respect for the privacy of David Marc Buckner. Last, page 14 shows that there is some intra-firm disagreement over attorney Lisa B. Keyfetz's biography. *See* Affid. Tucker Ronzetti, Ex. B at 2, 12, 14.

best represent the class. Beyond Plaintiff's counsel's assertions that the newest class is the one with the largest financial interest (despite the Court still not knowing what many of the Cordova plaintiffs' alleged investment amounts were), no evidence of the superiority of the class is offered. Viewing the matter procedurally, the Cordova class is the group of plaintiffs that holds the rebuttable presumption of suitability for appointment as lead plaintiffs. It was in their name that the Notice was published. They survived the 60 day notice period without a motion being filed to the Court. Finally, there is no way for the Court to determine whether the Cordova plaintiffs or the proposed new lead plaintiffs have the largest financial interest. Plaintiffs have opted not to explain any of these facts, choosing instead to state that these matters are "none of Defendants' business" and that the rationale behind the proposed switch is a matter of attorney-client strategy.

■ This proposed change in lead plaintiffs is not of the type intended in the PSLRA.[2] The PSLRA seeks to " 'ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers.' " *Vincelli v. Nat'l Home Health Care Corp.*, 112 F.Supp.2d 1309, 1314 (M.D.Fla.2000) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y.1997). Further, the Court "should have access to explore the facts sufficiently in order to make an intelligent determination of the matter. The determination of fair and adequate representation rests on two bases: 1.) common interests between a representative and the class; and, 2.) a willingness and ability to vigorously prosecute the action." *Vincelli*, 112 F.Supp.2d at 1314 (citations omitted). Here, Plaintiffs' counsel's actions reflect a spirit contrary to the PSLRA. Counsel seeks to control the pace and strategy of the action

and has not given the Court sufficient evidence to readily determine which of the three purported classes and/or lead plaintiffs it has placed before the Court is the most adequate. Based upon the Second Amended Complaint and the proceedings to this point, the Cordova plaintiffs have seemingly shown their common interests with the class and a willingness and ability to prosecute the action. *See id.* Nothing in any of the motions relevant to this Order refutes this conclusion. Thus, faced with the lack of evidence to the contrary and finding that the new plaintiffs have not sustained their burden, the Court adopts the Financial Institutions' inference that the amended complaint is merely for the purpose of undue delay and has a dilatory motive.

Based upon the foregoing, the Court finds it is not in the interests of justice to allow Plaintiffs to file a fourth complaint. *See, e.g., Andrx Pharmaceuticals*, 421 F.3d at 1236–37; *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213 (11th Cir.2004); *Lowe's Home Ctrs. Inc. v. Olin Corp.*, 313 F.3d 1307 (11th Cir.2002). Here, as in *Carruthers*, the Court finds that Plaintiffs have not offered sufficient reasons why allowing the amendment is in the interests of justice. Further, allowing the amendment would prejudice the Financial Institution Defendants who have expended large amounts of time and resources in drafting the motions to dismiss. To allow the Plaintiffs to again amend the complaint and, therefore, moot the motions to dismiss, would force the Financial Institution Defendants to conduct further research and adjust their arguments yet again.

Similarly, it is not in the interests of justice nor is it procedurally correct to allow the new class (the Urbaneja) plaintiffs to serve as lead plaintiffs. The Court is unable to discern, based upon the record, whether the Urbaneja plaintiffs would be more adequate

**2.** The Court notes Plaintiffs' argument that Defendants lack standing to challenge the proposed change in lead plaintiffs under the PSLRA. The Court finds this argument irrelevant as Plaintiffs still have to convince the Court as to which purported class is the most adequate. *See, e.g., Vincelli*, 112 F.Supp.2d at 1314. As noted *supra*, faced with a dearth of information regarding the

finances of the plaintiffs, the Court must provide the Cordova plaintiffs with the rebuttable presumption of adequacy called for in 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa), as the Cordova plaintiffs filed the valid complaint in this case and the Court received no motion to appoint another set of plaintiffs during the notice period.

lead plaintiffs than the Cordova plaintiffs. As such, based upon the progress of the case and the legislative intent of the PSLRA, it is in the interest of judicial economy and to avoid prejudice against Defendants to not allow an entirely new class of plaintiffs to proceed with, in effect, a fourth version of the complaint against them.

## IV. CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that

1. Plaintiffs' Motion to Be Appointed Lead Plaintiffs and for the Approval of Their Selection of Lead Counsel and Incorporated Memorandum of Points and Authorities in Support (DE # 236) is DENIED.

2. Class Plaintiffs' Motion for Time in Which to File an Amended Complaint and to Stay the Current Briefing Schedule (DE # 239) is DENIED.

3. Class Plaintiffs' Motion for Leave to File Amended Class Action Complaint (DE # 241) is DENIED.

4. Plaintiffs are hereby instructed to file their reply, if any, to the Financial Institution Defendants' Motions to Dismiss within ten (10) days of this Order.

5. Plaintiffs are hereby instructed to file proper PSLRA Certifications for the named plaintiffs.