Darrell JUDE, Plaintiff,

v.

Hill MORRISON, et al., Defendants.

Civil Action No. 4:07–CV–170–RLV.

United States District Court,
N.D. Georgia,
Rome Division.

Feb. 14, 2008.

Hendrick Lafayette Cromartie, III, H.L. Cromartie III, P.C., Rome, GA, for Plaintiff.

Ronald R. Womack, Steven M. Rodham, The Womack Law Firm, Lafayette, GA, for Defendants.

## ORDER

ROBERT L. VINING, JR., Senior District Judge.

This is an action brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, in which the plaintiff also asserts several state law causes of action. Pending before the court are the defendants' motion for partial judgment on the pleadings [Doc. No. 14] and the plaintiff's motion for leave to amend his complaint [Doc. No. 18].

## I. FACTUAL BACKGROUND

In considering a motion for judgment on the pleadings, the court must accept the allegations in the complaint as being true and must view them in the light most favorable to the plaintiff. *Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC,* 421 F.3d 1227 (11th Cir.2005). Consequently, the following "facts" are the allegations contained in the plaintiff's complaint.

On or about September 11, 2004, Jarvis Battles attempted to rob the plaintiff at

the plaintiff's house. As a result of this attempted robbery Jude and Battles got into an altercation. Jude ordered Battles off his property and went back into his house. Some time thereafter, Battles contacted the Walker County Sheriff's Department and filed a false report, claiming that Jude had robbed him. As a result of this report, the Walker County Sheriff's Department sent officers to Jude's house.

The Walker County deputies who were first on the scene notified Major Hill Morrison and requested a K9 officer's presence. Thereafter, Major Morrison, Sergeant Pat Cook, and deputies Dewayne Llewellyn, Greg Dixon, and Andy Cash arrived at the scene. At this time, Jude was asleep on a couch in his residence.

Initially, one of the officers threw a percussion grenade into Jude's house. At about the same time, the officers sent a police dog into the house to attack Jude. Since Jude was lying on his couch, the dog did not attack him at this time. However, after a short time, the officers entered the house and, in a conspiracy with each other, attempted to have the police dog attack Jude. When the dog did not attack Jude, the officers themselves began to beat Jude in the head and body and also to kick him, with at least one officer using some kind of weapon, possibly a baton.

During this beating, Jude offered no resistance. Jude was eventually cuffed, and while he was cuffed, one of the officers, responding to Major Morrison, tasered Jude several times. As a result of this beating, Jude suffered serious and permanent injuries, including scarring and a substantial loss of hearing in one ear.

Jude was arrested, but because the officers conspired among themselves, he was not allowed to contact an attorney, and he was not given the opportunity to post bond. While incarcerated, Jude was told that if he would "sign off" on the beating, he would probably be freed. He refused to sign off and, as a consequence, remained in jail. Jude obtained an attorney on November 5, 2004,[1] and was given a bond hearing later that month, at which time bond was set at $100,000. Jude was eventually released after being incarcerated for 60 days. Walker County has yet to bring Jude to trial on the charges for which he was arrested on September 11, 2004.

On September 7, 2006, Jude filed an action against Major Morrison in this court, alleging use of excessive force in violation of federal law; that complaint also asserted state law claims for assault and battery and intentional infliction of emotional distress. *Jude v. Morrison*, Civil Action No. 4:06–CV–199–RLV. That action was voluntarily dismissed, with the defendant's consent, on February 27, 2007.

The plaintiff filed the instant action on August 27, 2007, asserting federal causes of action under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. He also asserts pendent state law claims for false arrest and imprisonment, assault and battery, malicious prosecution, abuse of process, negligence and gross negligence, and intentional infliction of emotional distress.

## II. LEGAL DISCUSSION

By prior order, this court directed the plaintiff to show cause why the fictitious

---

1. Paragraph 26 of the complaint states that Jude was arrested on September 11, 2005; paragraph 27 states that Jude obtained an attorney on November 5, 2005. The use of "2005" in each paragraph is clearly a typographical error. In later pleadings, Jude acknowledges that the events complained of occurred in 2004, not 2005.

John Doe defendants should not be dismissed. In response to that order, the plaintiff acknowledged that the Federal Rules of Civil Procedure do not contemplate the use of fictitious defendants and agreed that they should be dismissed. Therefore, the John Doe defendants are dismissed from this action.

The plaintiff sued the defendants in both their individual and official capacities. In their motion for partial summary judgment, the defendants contend that they have Eleventh Amendment immunity with respect to the federal claims against them in their official capacity. In responding to the motion, the plaintiff states that he sued the defendants in their official capacity only with respect to the state law claims.

■ Since that part of the defendants' motion for judgment on the pleadings regarding the plaintiff's federal claims against the defendants in their official capacity is unopposed, the court will grant that part of the motion but on a different basis. Suits against persons in their official capacity are actually suits against the governmental entity they represent. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In *Manders v. Lee*, 338 F.3d 1304 (11th Cir.2003) (en banc), the Eleventh Circuit held that Georgia sheriffs operate as an arm of the state in establishing use-of-force policy at jails and in training and disciplining deputies in that regard. The court also strongly suggested that when sheriffs perform other law enforcement duties they are also acting as an arm of the state.[2] In *Manders*, the Eleventh Circuit held that sheriffs had

Eleventh Amendment immunity for actions taken as an arm of the state.

In reaching this decision, the Eleventh Circuit analyzed Supreme Court precedent on Eleventh Amendment immunity. However, neither of the cases discussed in *Manders* was brought pursuant to section 1983. *See. e.g., Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (finding jurisdiction under 28 U.S.C. § 1331, not 28 U.S.C. § 1343, and, thus, not implicating 42 U.S.C. § 1983);[3] *Regents of the University of California v. Doe*, 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) (breach of contract).

The Eleventh Circuit also referred to *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). That case was brought pursuant to section 1983. However, the plaintiff had sued the county for actions taken by the sheriff. The Supreme Court held that the sheriff was acting as an arm of the state, not the county, and upheld the dismissal of the claims against the county. The question of Eleventh Amendment immunity for the state was not an issue.

The only relevant Supreme Court decision dealing with section 1983 suits against a state was mentioned in a footnote. Although the Supreme Court had specifically held that a state is not a person for purposes of section 1983 and is, therefore, not amenable to suit under section 1983, *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Eleventh Circuit dismissively said, "This statutory issue, however, is not

---

2. As noted above, the plaintiff in this action concedes that the defendants in their official capacity were acting as an arm of the state.

3. The court also notes that this case was decided prior to *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), discussed *infra*.

before us as it was neither briefed nor argued on appeal." 338 F.3d at 1328 n. 53. Inexplicably, the Eleventh Circuit made this decision after quoting Supreme Court precedent directly on point:

> We are mindful of the Supreme Court's instruction that, before reaching an Eleventh Amendment issue, a court should address "the question [of] whether the statute itself *permits* the cause of action it creates to be asserted against States." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (emphasis in original).

338 F.3d at 1328 n. 53 ("correction" added by Eleventh Circuit).

■ This court chooses to follow binding Supreme Court precedent instead of *Manders* with respect to section 1983 claims against a state. The plaintiff's section 1983 claims against the defendants in their official capacity are dismissed because they are not persons within the meaning of section 1983, not because of Eleventh Amendment immunity.

With respect to the plaintiff's claims against Sergeant Cook, and deputies Llewellyn, Dixon, and Cash, the plaintiff concedes that all his claims against these persons are barred by the statute of limitations.[4] Therefore, the plaintiff's claims against these defendants are dismissed as being time barred.

■ Because the instant action was filed after the statute of limitations, the plaintiff's claims against all of the defendants would ordinarily be barred. However, be-

cause the plaintiff filed a suit against Major Morrison before the running of the statute and because he voluntarily dismissed that action, Georgia's renewal statute, O.C.G.A. § 9–2–61, allowed him to reinstate those claims within six months of that dismissal. "To suspend the running of the statute of limitation in a renewal action, the cause of action must be substantially the same as in the original action." *Burns v. Dees,* 252 Ga.App. 598, 607, 557 S.E.2d 32 (2001). Therefore, only those specific claims raised in the plaintiff's first suit against Major Morrison may be maintained in this action.

The only claims asserted in the first action were contained in paragraphs 22 and 23 of that complaint:

### 22

The actions of excessive use of force set out above were in violation of one or more of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution entitles [*sic*] Plaintiff to relief under 42 U.S.C. § 1983 against said Defendants in their individual capacities.

### 23

The actions and conduct of Defendant Hill Morrison and John Does one through five, alleged in the above stated cause of action constitute assault and battery and intentional infliction of emotional distress, and outrageous conduct under the laws of the State of Georgia, and this Court had pendent jurisdiction to hear and adjudicate said claims.

In paragraph 24, the plaintiff sought punitive damages for the acts of the defen-

---

**4.** Despite this concession, at page four of his brief, the plaintiff repeatedly refers to "Defendants" when addressing other issues raised in the defendants' motion for partial judgment on the pleadings. Because of the plaintiff's concession, the court will treat such references to "Defendants" as relating only to Major Morrison.

dants.[5]

Notably, there were no conspiracy claims in the first complaint, and there was no reference to 42 U.S.C. §§ 1985, 1986, or 1988. Additionally, any claim under section 1986 would have been barred by the one-year statute of limitation contained in that section. Of course, section 1988 does not create a cause of action but simply provides for an award of attorney's fees in actions brought pursuant to section 1983. The complaint did reference 42 U.S.C. §§ 2093 and 1098, but section 2093 gives the Atomic Energy Commission the authority to issue certain licenses, and section 1098 does not exist.

To the extent that the instant complaint seeks to state a claim for a Fifth Amendment substantive due process claim, such claim is foreclosed by *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), in which the Supreme Court held:

> *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

490 U.S. at 395, 109 S.Ct. at 1871

The court holds that the only viable federal claim in this renewed action is the plaintiff's section 1983 claim against Major Morrison in his individual capacity alleging excessive use of force in violation of the Fourth and Fourteenth Amendments. Because Major Morrison is sued in his individual capacity, the plaintiff may properly seek punitive damages against him.

Under federal law, suing a person in his official capacity is simply an alternative method of suing the governmental entity itself. "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71, 109 S.Ct. at 2312. Thus, if suit against the governmental entity is barred, suit against the official in his official capacity is also barred. The only exception to this rule is when injunctive relief is sought. In those cases, even though suit seeking damages against the governmental entity is barred, injunctive relief against the official in his official capacity is permitted. *See Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Will, supra.*

Official capacity suits were originally utilized to circumvent the prohibition against suing states. Thus, the courts created the legal fiction that a person in his official capacity was not really the state and, therefore, could be sued. This was explained in *Kentucky v. Graham:*

> There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief. *See, e.g., Memphis Police Dept. v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (decided with *Tennessee v. Garner* ) (damages action against municipality). Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of

---

**5.** The only named defendant in the first action was Major Morrison; all the other defendants were listed as John Does.

the relief sought. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.

473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14.[6]

■ The Georgia courts also recognize official capacity suits against governmental officers. However, they seem to have confused "official capacity" with "within scope of employment" and have discussed official capacity liability in terms of scope of employment.[7] The two Georgia cases relied upon by Major Morrison illustrate this confusion. In *Hennessy v. Webb,* 245 Ga. 329, 330, 264 S.E.2d 878 (1980) (quoting *Roberts v. Barwick,* 187 Ga. 691, 1 S.E.2d 713 (1939)), the Supreme Court of Georgia stated:

"Any suit against an officer or agent of the State, in his official capacity, in which a judgment can be rendered controlling the action or property of the State in a manner not prescribed by statute, is a suit against the State" … and cannot be maintained without its consent.

This case involved the liability of a school principal in carrying out his duties as a principal. After giving the definition of an official capacity, the court then went on to say:

The plaintiffs here argue that the defendant enjoys no governmental immunity by reason of the fact that he is being sued as an individual and not in his official capacity and that his act in allowing an alleged hazardous condition to exist was ministerial as opposed to discretionary.

We cannot agree with these contentions. In their complaints, the plaintiffs positively allege "… at all times during the acts complained of in this complaint, defendant was principal of Southwest De-Kalb High School and as such had the legal custody and control of the premises therein." Plaintiffs also allege "… defendant had allowed a condition to exist and continue at said Southwest DeKalb High School in that he allowed under his direct supervision and control a rug and mat to be placed at a door in the said high school." It is clear from these allegations the suits were brought against this defendant solely because of the position he held and the duties imposed upon him as a result of this posi-

---

**6.** Since injunctive relief is not being sought in this action, this exception allowing official capacity suits in limited circumstances is not applicable.

**7.** The United States Supreme Court has been much more precise in its use of "official capacity." For there to be liability under section 1983, a person must have been acting "under color of state law": in other words, that person must have been acting within the scope of his employment as a officer of the governmental entity by which he is employed. This would be an individual capacity suit (for which the official could assert qualified immunity). When a person is sued in his official

capacity, he may not assert qualified immunity. However, because such suit is against the governmental entity itself, the plaintiff must show that the acts complained of were taken as the result of a custom or policy of the governmental entity. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.")

tion. Indeed, the act complained of could only have been done in the official capacity of defendant.

245 Ga. at 331, 264 S.E.2d 878.

The last sentence clearly shows that the court was using the term "official capacity" to mean "within scope of employment."

The other case cited by Major Morrison is *Hicks v. Walker County School District*, 172 Ga.App. 428, 323 S.E.2d 231 (1984). That case was a suit for negligence, arising out of an alleged assault on a school bus driven by Mary Jones. The court never discussed the fact that a suit against Mary Jones in her official capacity was, in fact, a suit against the school district. Instead the court stated:

> In their pleadings, appellants alleged that appellee Jones was acting "within the scope of her employment" when she was operating the school bus and no evidence was presented to controvert appellee Jones' affidavit testimony that she was acting within her official capacity at the time of the alleged assault. Thus, appellee Jones was sued in her official capacity as a school bus driver and is entitled to governmental immunity unless she has acted willfully, maliciously, unfaithfully or in bad faith.

172 Ga.App. at 429, 323 S.E.2d 231.

Again, it is clear that the court was equating "official capacity" with "scope of employment."

■ From these cases, the court distills the point of law that if a state official is acting within the scope of his employment, the governmental entity may be liable for such acts. It is against this backdrop that the court looks at the plaintiff's state law claims against Major Morrison.[8]

■ As an initial matter, this court notes that it is bound by the Eleventh Circuit's determination that when sheriffs (and their deputies) are performing law enforcement duties, they are considered to be an arm of the state, not county officials.[9] The court now turns to the issue of whether Major Morrison is entitled to immunity.

Art. I, § II, ¶ IX(d) of the Georgia Constitution provides for official immunity, but such immunity attaches only when an official, acting within the scope of his employment, does not act with actual malice in causing injury:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or

---

8. The plaintiff concedes that his state law claim for malicious prosecution is not ripe and that his state law claim for abuse of process is not viable because the underlying action is a criminal, not civil, process. Thus, the only viable state law claims are those which were asserted in the first action, viz., assault and battery and intentional infliction of emotional distress.

9. The court acknowledges that the holding of *Manders* was limited to the actions of sheriffs "in establishing use-of-force policy at the jail and in training and disciplining his deputies in that regard." *Manders*, 338 F.3d at 1328. However, there is strong dicta indicating that when a sheriff acts to enforce the laws of the State of Georgia, he is acting as an arm of the State of Georgia. Additionally, the plaintiff himself has acknowledged that Major Morrison was acting as an arm of the state when he was performing his law enforcement duties.

liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

 In *Merrow v. Hawkins*, 266 Ga. 390, 467 S.E.2d 336 (1996), the Georgia Supreme Court held that in the context of official immunity, "actual malice" requires a deliberate intention to do wrong. "Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." *Adams v. Hazelwood*, 271 Ga. 414, 415, 520 S.E.2d 896 (1999).

This court assumes, without deciding, that the complaint sufficiently alleges actual malice on the part of Major Morrison. Pursuant to O.C.G.A. § 50–21–25(b), any party asserting a tort claim based on the conduct of a state officer or employee must name as party defendant the state government entity for which that officer or employee was acting. If the officer or employee is individually named, which has been done in this case, that state government entity must be substituted as the defendant. Accordingly, the entity for which Major Morrison acted, the State of Georgia, is hereby substituted. However, an action against the State of Georgia cannot stand in this forum because the State of Georgia has not waived its sovereign immunity through the Georgia Tort Claims Act for actions brought in federal court. O.C.G.A. § 50–21–23(b). Consequently, this court does not have subject matter jurisdiction over the plaintiff's tort claim against the State of Georgia based on Major Morrison's actions.[10]

For the foregoing reasons, the defendants' motion for partial judgment on the pleadings [Doc. No. 14] is GRANTED, and all the plaintiff's claims against all defendants are dismissed except his section 1983 excessive force claim. The plaintiff's motion for leave to amend his complaint [Doc. No. 18] is DENIED.[11]

---

**10.** Major Morrison also asserted that the state law claims were barred because the ante litem notice required by O.C.G.A. § 36–11–1. That section, however, is irrelevant, since it deals with suits against counties, not against the state. Of course, the court does not need to reach the issue of whether proper ante litem notice was given since, even with such notice, official immunity has not been waived for suits brought in federal court.

**11.** In the proposed amendment, the plaintiff sought to assert a substantive due process claim under the Fifth Amendment (which this court has rejected) and also an Eighth Amendment claim, which would be time barred, since it was not raised in the first complaint. Thus, the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).